## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 09-10982 (PJW) |
| INDALEX HOLDINGS FINANCE, INC., a Delaware Corporation, *et al.* | (Jointly Administered) |
| Debtors | **Ref. Docket No.: 75** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS (A) TO OBTAIN POST-PETITION FINANCING UNDER 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL UNDER 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION UNDER 11 U.S.C. §§ 361, 362, 363 AND 364  AND (III) SCHEDULING A FINAL HEARING UNDER BANKRUPTCY RULE 4001(b) AND (c)**

Upon the motion (the "**Motion**"), dated April 7, 2009, of Indalex Holdings Finance, Inc. ("**Holdings**"), Indalex Holding Corp. (the "**Parent Borrower**") and their affiliated debtors, each as a debtor and debtor-in-possession (collectively, the "**Debtors**"), in the above-captioned chapter 11 cases (the "**Cases**") commenced in this Court on March 20, 2009 (the "**Petition Date**"), under sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"); and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rules for the Bankruptcy Court for the District of Delaware 4001-2 and 2002-1(b) (the "**Local Rules**"), seeking, among other things:

(1) authorization for Holdings, the Parent Borrower and each of the other Debtors to enter into the Credit Agreement, dated as of April 8, 2009, substantially in the form attached as Exhibit A to the Motion (the "**DIP Credit Agreement**"; together with the Domestic Security Agreement dated on or about

April 8, 2009 (the "**DIP Domestic Security Agreement**"), the Canadian Security

Agreement dated on or about April 8, 2009, and any other related agreement,

instrument or other document delivered or executed in connection with the DIP

Credit Agreement, the "**DIP Documents**"), among Holdings, the Parent

Borrower, each of the other Debtors, certain non-debtor affiliates of Holdings

party thereto, JPMorgan Chase Bank, N.A. ("**JPMorgan**"), as administrative

agent (in such capacity, the "**DIP Agent**"), and the lenders from time to time

party thereto (collectively, the "**DIP Lenders**"), in connection with postpetition

financing (the "**Financing**") consisting of a senior secured superpriority revolving

credit facility made available to the Parent Borrower and Indalex Limited (the

"**Canadian Subsidiary Borrower**," and together with the Parent Borrower, the

"**Borrowers**"), a non-debtor affiliate of Holdings organized under the laws of

Canada, in the aggregate principal amount of $85,877,371 (it being understood

that the actual available principal amount at any time shall be subject to those

conditions set forth in the DIP Documents and it being further understood that the

aggregate principal amount available under such facility on an interim basis shall

not exceed $42,500,000, which is inclusive of the Prepetition Obligations and

Cash Collateral Loans (each as defined below));

(2)  authorization for the Parent Borrower to guarantee the obligations of

the Canadian Subsidiary Borrower under the DIP Credit Agreement and for each

of the other Debtors (together with the Parent Borrower, solely in its capacity as

guarantor of the obligations of the Canadian Subsidiary Borrower under the DIP

2

Credit Agreement, the "**Guarantors**") to guarantee each of the Borrowers' obligations under the DIP Credit Agreement;

(3) authorization for the Debtors to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(4) authorization for the Debtors to convert the Prepetition Obligations (as defined below) into DIP Obligations (as defined below) on the terms and conditions set forth in the DIP Credit Agreement, the other DIP Documents, this Order and the Final Order (each as defined herein);

(5) authorization for the Debtors to use the Cash Collateral (as defined below) and any other Prepetition Collateral (as defined below) in which the Prepetition Secured Parties (as defined below) have an interest;

(6) the granting of adequate protection to the Prepetition Secured Parties with respect to any diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral, whether from the use of the Cash Collateral, the use, sale, lease, depreciation or other diminution in value of the Prepetition Collateral, the priming of their liens or as a result of the imposition of the automatic stay under section 362(a) of the Bankruptcy Code;

(8) approval of certain stipulations by the Debtors with respect to the Prepetition Credit Agreement (as defined below) and the claims, liens and security interests arising therefrom;

3

(9)  subject only to and effective upon entry of the Final Order (as defined below), the limitation of the Debtors' right to surcharge against collateral under section 506(c) of the Bankruptcy Code;

(10) under Bankruptcy Rule 4001 and Local Rule 4001-2, an interim hearing (the "**Interim Hearing**") on the Motion for the proposed interim order annexed to the Motion (this "**Order**") (i) authorizing the Borrowers, on an interim basis, to forthwith borrow from the DIP Lenders under the DIP Documents up to an aggregate principal or face amount not to exceed $42,500,000 (subject to any limitations on borrowings under the DIP Documents), (ii) authorizing the Debtors' use of Cash Collateral and (iii) granting the adequate protection described herein; and

(11) a final hearing (the "**Final Hearing**") to be held within 30 days after entry of this Order to consider entry of a final order (the "**Final Order**") authorizing the balance of the borrowings under the DIP Documents on a final basis, as set forth in the Motion and the DIP Documents filed with this Court.

The Debtors having served notice pursuant to sections 102(1), 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and Local Rule 2002-1(b), of the Motion, the relief requested therein and the Interim Hearing on, among others, the thirty largest unsecured creditors of the Debtors, on a consolidated basis, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Indenture Trustee, the other Prepetition Secured Parties, the Official Committee of Unsecured Creditors and the Office of the United States Trustee for the District of Delaware;

DB02:8032346.4                                                                 068136.1001

the Interim Hearing having been held by this Court on April 8, 2009; and

upon the record made by the Debtors at the Interim Hearing, the record in these Cases and the Declaration of Timothy R. J. Stubbs in support of Chapter 11 Petitions and First Day Relief and after due deliberation and consideration and sufficient cause appearing therefor:

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Disposition.* The Motion is granted on an interim basis on the terms set forth herein. Any objections to the interim relief sought in the Motion that have not been previously resolved or withdrawn are overruled on the merits. This Order shall be valid, binding and enforceable on all parties in interest and fully effective immediately upon entry.

2.      *Jurisdiction and Venue.* This Court has jurisdiction over the Cases and the Motion as a core proceeding and over the parties and property affected hereby under 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. No request has been made for the appointment of a trustee or examiner. On April 1, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors in these Cases (the **"Creditors' Committee"**).

3.      *Notice.* Notice has been given by the Debtors of the Motion and the Interim Hearing pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2.

4.      *Prepetition Secured Facilities.* As of the Petition Date, the Debtors were party to the following agreements:

(a)      the Amended and Restated Credit Agreement, dated as of May 21, 2008 (as amended, supplemented or otherwise modified prior to the Petition Date, the **"Prepetition Credit Agreement"**), among Holdings, the Borrowers, the other subsidiaries of the Parent

5

Borrower party thereto, the lenders party thereto (such lenders that made revolving extensions of credit under the Prepetition Credit Agreement, collectively, the **"Prepetition Revolving Lenders"**; and Sun Capital Partners, Inc. or any affiliate thereof (the **"Prepetition Term Lender,"** together with the Prepetition Revolving Lenders, the **"Prepetition Lenders"**) that made term loans under the Prepetition Credit Agreement (the **"Prepetition Term Loans"**)) and JPMorgan, as administrative agent (in such capacity, the **"Prepetition Agent"**);

(b)     Amendment No. 2, Waiver and Agreement, dated as of March 6, 2009 (**"Amendment No. 2"**), among Holdings, the Borrowers, each of the other Debtors party thereto, certain non-debtor affiliates of Holdings party thereto, the Prepetition Lenders and the Prepetition Agent;

(c)     the Amended and Restated Domestic Security Agreement, dated as of May 21, 2008 (as amended, supplemented or otherwise modified prior to the Petition Date, the **"Domestic Security Agreement"**) among Holdings, the Parent Borrower, the subsidiaries of Holdings party thereto and the Prepetition Agent;

(d)     the Canadian Security Agreement, dated as of February 2, 2006 (as amended, supplemented or otherwise modified prior to the Petition Date, the **"Canadian Security Agreement"**; together with the Domestic Security Agreement, any and all other security agreements, pledge agreements, fixture filings, mortgages, hypothecs, deeds of trust, control agreements, financing statements and any and all other collateral and ancillary documentation executed or delivered in connection therewith, the **"Prepetition Security Documents"**) among Holdings, the Canadian Subsidiary Borrower, the subsidiaries of Holdings party thereto and the Prepetition Agent;

6

(e)    the Indenture, dated as of February 2, 2006 (as amended, supplemented or otherwise modified prior to the Petition Date, the **"Prepetition Indenture"**), among the Parent Borrower, each note guarantor from time to time party thereto and U.S. Bank National Association, a national banking association, as indenture trustee (the **"Prepetition Indenture Trustee"**) in respect of the $270 million of 11½% Notes due 2014 (the holders of such notes, the **"Prepetition Secured Noteholders"**; together with the Prepetition Agent, the Prepetition Revolving Lenders, the Prepetition Term Lender and the Prepetition Indenture Trustee, the **"Prepetition Secured Parties"**); and

(f)    the Intercreditor Agreement, dated as of February 2, 2006 (as amended, supplemented or otherwise modified prior to the Petition Date, the **"Intercreditor Agreement"**), among the Prepetition Agent, the Prepetition Indenture Trustee, Holdings and each subsidiary of Holdings party thereto.

5.    *Interim Cash Collateral Order*.  On March 23, 2009, the Bankruptcy Court entered the Interim Order (I) Authorizing the Use of Prepetition Lenders' Cash Collateral Under 11 U.S.C. § 363, (II) Granting Adequate Protection Under 11 U.S.C. §§ 361, 363 and 364 and (III) Scheduling a Final Hearing Under Bankruptcy Rule 4001(b) and (c) (the **"Interim Cash Collateral Order"**).  As of the date hereof, the Borrowers were indebted and liable to the Prepetition Agent and the Prepetition Revolving Lenders in respect of **"Cash Collateral Loans"** (as defined in the Interim Cash Collateral Order) in the aggregate principal amount of not less than $13,060,271.98 (plus accrued and unpaid interest thereon), and each other Debtor was contingently liable to the Prepetition Agent and the Prepetition Revolving Lenders in an aggregate amount not less than the outstanding amount of Cash Collateral Loans (plus accrued

**7**

and unpaid interest thereon). The validity, priority and enforceability of (i) any Cash Collateral Loan or "Adequate Protection Obligation" (as defined, solely for the purposes of this sentence, in the Interim Cash Collateral Order) incurred under the Interim Cash Collateral Order and (ii) any "Postpetition Lien" or "Adequate Protection Lien" (as each such term is defined, solely for the purposes of this sentence, in the Interim Cash Collateral Order) authorized or created by or pursuant to the Interim Cash Collateral Order, in each case shall remain in full force and effect and be unimpaired and otherwise unaffected by this Order.

6.      *Debtors' Stipulations.* Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 20 and 21), the Debtors admit, stipulate and agree that:

(a)      as of the Petition Date, (i) each of the Borrowers was indebted and liable to the Prepetition Agent and the Prepetition Revolving Lenders, without defense, counterclaim or offset of any kind, in respect of revolving loans and bankers' acceptances made by the Prepetition Revolving Lenders to the Borrowers under the Prepetition Credit Agreement in the aggregate principal amount of not less than $64,168,106.94 (it being understood that such amount is subject to fluctuation based on currency exchange rates) (plus accrued and unpaid interest thereon), (ii) each of the Borrowers was contingently liable to the issuing banks under the Prepetition Credit Agreement and the Prepetition Revolving Lenders in the aggregate face amount of not less than $8,242,984.00 on account of the Borrowers' reimbursement obligations with respect to letters of credit issued under the Prepetition Credit Agreement, which remained outstanding as of the Petition Date, (iii) each of the Borrowers was indebted and liable to the Prepetition Agent and the Prepetition Revolving Lenders for fees, expenses (including any

8

attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or

reimbursable under the Prepetition Credit Agreement, the Prepetition Security Documents,

Amendment No. 2 or any related agreement, instrument or other document executed or delivered

in connection therewith (collectively, the **"Prepetition Loan Documents"**)), charges and other

obligations incurred in connection with such loans, bankers' acceptances and letters of credit as

provided in the Prepetition Loan Documents, (iv) the Debtors were liable to certain of the

Prepetition Revolving Lenders or their affiliates in respect of Swap Obligations (as defined in the

Prepetition Credit Agreement), (v) the Debtors were indebted to the Prepetition Revolving

Lenders or their affiliates for Banking Services Obligations (as defined in the Prepetition Credit

Agreement) (items (i) through (v), collectively, the **"Prepetition Obligations"**) and (vi) each

Debtor party to a guaranty executed and delivered in respect of the Prepetition Obligations was

contingently liable to the Prepetition Agent and the Prepetition Revolving Lenders under each

such guaranty in the aggregate amount of not less than the aggregate amount of the Prepetition

Obligations;

       (b)    the Prepetition Loan Documents and the Prepetition Obligations

constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with

their terms (other than in respect of the stay of enforcement arising from section 362 of the

Bankruptcy Code), and no portion of the Prepetition Obligations is subject to avoidance,

recharacterization, reduction, disallowance, impairment, recovery or subordination under the

Bankruptcy Code or applicable nonbankruptcy law;

       (c)    the Debtors do not have any claims, counterclaims, causes of action,

defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the

9

                                 

Prepetition Agent, the Prepetition Revolving Lenders or their respective affiliates, subsidiaries, members, agents, officers, directors, employees and attorneys;

(d)      as of the Petition Date, (i) each of the Borrowers was indebted and liable to the Prepetition Term Lender, without defense, counterclaim or offset of any kind, in respect of term loans made by the Prepetition Term Lender to the Borrowers under the Prepetition Credit Agreement in the aggregate principal amount of not less than $30,275,416.66 (plus accrued and unpaid interest thereon), (ii) each of the Borrowers was indebted and liable to the Prepetition Term Lender for fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Prepetition Loan Documents, charges and other obligations incurred in connection with such term loans (items (i) through (iii), collectively, the "**Prepetition Term Obligations**") and (iv) each Debtor party to a guaranty executed and delivered in respect of the Prepetition Term Obligations was contingently liable to the Prepetition Term Lenders under each such guaranty in the aggregate amount of not less than the aggregate amount of the Prepetition Term Obligations;

(e)      the Prepetition Loan Documents and the Prepetition Term Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no portion of the Prepetition Term Obligations is subject to avoidance, recharacterization, reduction, disallowance, impairment, recovery or subordination under the Bankruptcy Code or applicable nonbankruptcy law;

(f)      the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the

068136.1001

Prepetition Term Lenders or their respective affiliates, subsidiaries, members, agents, officers, directors, employees and attorneys;

(g)    the liens and security interests granted to the Prepetition Agent (for the ratable benefit of the holders of the Prepetition Obligations and Prepetition Term Obligations) under and in connection with the Prepetition Security Documents are valid, binding, perfected, enforceable, first-priority liens on the personal and real property described in each such Prepetition Security Document (together with the setoff rights described in the Existing Documents (as defined below) and arising by operation of law, the "**Prepetition Collateral**"), not subject to avoidance, recharacterization or subordination under the Bankruptcy Code or applicable nonbankruptcy law and subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Adequate Protection Liens (as defined below), (C) the Carve Out (as defined below) and (D) valid, perfected and unavoidable liens permitted under the Prepetition Loan Documents to the extent such liens are permitted to be senior to or *pari passu* with the liens of the Prepetition Agent on the Prepetition Collateral; and

(h)    the aggregate value of the Prepetition Collateral exceeds the aggregate amount of the Prepetition Obligations and the Prepetition Term Obligations.

7.    *Findings Regarding the Financing.*

(a)    Good cause has been shown for issuance of this Order.

(b)    The Debtors do not have available sources of working capital and financing to carry on the operation of their businesses without obtaining the Financing and the use of the Cash Collateral. The Debtors have an immediate need to obtain the Financing and use the Cash Collateral to permit, among other things, the orderly continuation of the operation of

11

their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs. The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Credit Agreement without the grant of priming liens and superpriority claims as set forth herein and the application of collateral proceeds to the Prepetition Obligations as set forth herein.

(d)     Based on the record presented to the Court at the Interim Hearing, the terms of the Financing and the use of Cash Collateral are fair and reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The Financing and the use of the Cash Collateral have been negotiated in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders and the Prepetition Agent, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including without limitation, (i) all loans made to, and all letters of credit deemed issued for the account of, the Borrowers under

12

the DIP Credit Agreement and (ii) any "Secured Obligations" (as defined in the DIP Credit Agreement), including credit extended in respect of overdrafts and related liabilities and other depository, treasury, and cash management services and other clearing services provided by the DIP Agent, any DIP Secured Party (as defined below) or their respective affiliates (all of the foregoing in clauses (i) and (ii) collectively, the **"DIP Obligations"**), shall be deemed to have been extended by the DIP Agent, such DIP Secured Party and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens (as defined below) and the Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. For purposes of this Order, the "DIP Obligations" shall include the Cash Collateral Loans (plus accrued and unpaid interest thereon) made under the Interim Cash Collateral Order outstanding as of the date hereof.

    (f)  The Debtors have requested immediate entry of this Order under Bankruptcy Rule 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2. Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the Financing and authorization of the use of Cash Collateral in accordance with this Order and the DIP Documents is therefore in the best interest of the Debtors' estates consistent with their fiduciary duties.

    8.  *Authorization of the Financing and the DIP Documents.*

    (a)  The Debtors are hereby authorized to enter into the DIP Documents. The Parent Borrower is hereby authorized to borrow money and, subject to and effective upon entry

13

of the Final Order, amend, extend or renew letters of credit pursuant to the DIP Credit Agreement in such amounts as may be made available to the Parent Borrower by the DIP Agent and the DIP Lenders in accordance with all of the lending formulae, sublimits and other terms and conditions set forth in the DIP Documents and this Order; *provided*, that pending entry of the Final Order, the aggregate principal amount of the extensions of credit made under the DIP Credit Agreement outstanding at any time shall not exceed $42,500,000 (plus interest, fees and other expenses and amounts provided for in the DIP Documents) (excluding amounts in respect of the Prior Swap (as defined in the DIP Credit Agreement)), which amount is inclusive of the Prepetition Obligations and Cash Collateral Loans outstanding under the Interim Cash Collateral Order as of the date of this Order. The Guarantors are hereby authorized to guarantee such borrowings and the Borrowers' obligations under the DIP Credit Agreement and the other DIP Documents, in accordance with the terms of this Order and the DIP Documents. The proceeds of any revolving loans made under the DIP Credit Agreement shall be used for the purposes, and subject to the terms and conditions, set forth in the DIP Credit Agreement and the other DIP Documents. In addition to such loans and obligations, the Debtors are authorized to incur overdrafts and related liabilities arising from treasury, depository and cash management services including any automated clearing house fund transfers provided to or for the benefit of any of the Debtors by the DIP Agent, the DIP Lenders or any of their respective affiliates; *provided* that nothing herein shall require the DIP Agent, any DIP Lender or any of their respective affiliates to incur overdrafts or to provide such services or functions to the Debtors.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all

14

instruments and documents (including, without limitation, the execution or recordation of security agreements, pledge agreements, fixture filings, mortgages, hypothecs, deeds of trust, control agreements and financing statements), and to pay all fees that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including, without limitation:

(i)    the execution, delivery and performance of the DIP Credit Agreement and the other DIP Documents, any security agreements, pledge agreements, fixture filings, mortgages, hypothecs, deeds of trust, control agreements, financing statements contemplated thereby and any exhibits attached thereto,

(ii)    the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement (and in the separate letter agreements between the DIP Agent and the Debtors party thereto in connection with the Financing) and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Documents; *provided* that the Debtors shall provide to the Creditors' Committee and the Office of the United States Trustee immediately upon receipt thereof a copy of any invoice for the payment of professional fees and expenses incurred after the Effective Date and such invoice shall be subject to the procedures for review and objection set forth in paragraph 15(c),

15

(iii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to the DIP Credit Agreement or the other DIP Documents (it being understood that no further approval of the Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Credit Agreement or the other DIP Documents (or any fees paid in connection therewith) (x) to make any non-material amendments or modifications to the DIP Credit Agreement or any other DIP Documents or (y) to make any material amendment or material modification to the DIP Credit Agreement or any other DIP Document; *provided* that notice of any material modification or material amendment to any of the DIP Documents shall be filed with the Bankruptcy Court and served by the Debtors on the Creditors' Committee and the U.S. Trustee, and the Creditors' Committee and the U.S. Trustee shall have five business days from the date of such filing within which to object in writing to such proposed modification or amendment; *provided further* that if the Creditors' Committee or the U.S. Trustee timely objects to any such modification or amendment to the DIP documents, then such modification or amendment shall only be permitted pursuant to an order of this Court after notice and a hearing.  For purposes hereof, a "material" modification shall mean any modification that operates to (1) shorten the maturity of the extensions of credit under the DIP Documents, (2) increase the aggregate amount of any of the commitments thereunder, (3) increase the rate of interest or any other fees or charges payable thereunder (other than to the extent contemplated in the DIP

16

Documents as in effect on the date hereof) or (4) otherwise modify the DIP Documents in a manner materially less favorable to the Debtors and their estates), and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of each of the Debtors, enforceable against each Debtor party thereto in accordance with their respective terms and the terms of this Order for all purposes during the Cases, any subsequently converted case of any Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of any Case. No obligation, payment, transfer or grant of security under any DIP Document or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

9.    *Conversion of Cash Collateral Loans and Prepetition Obligations; Application of Collateral Proceeds.*

(a)    As of the "**Effective Date**" (as defined in the DIP Credit Agreement), any and all outstanding Cash Collateral Loans made under the Interim Cash Collateral Order shall be deemed to have been converted into U.S. Revolving Loans or Canadian Revolving Loans, as the case may be, initially bearing interest at a rate determined by reference to the Alternate Base Rate (as such terms are defined in the DIP Credit Agreement) made to the Parent Borrower or the Canadian Subsidiary Borrower, as the case may be, and thereafter, such Cash Collateral

17

Loans, the interest payable thereon and the other terms and conditions thereof shall be governed by the DIP Credit Agreement.

(b)    Subject to and effective upon entry of the Final Order, (i) any Prepetition Obligations that have not been converted as of the date of entry of the Final Order to DIP Obligations shall be deemed to be converted to a DIP Obligation outstanding under the DIP Credit Agreement and (ii) any such conversion is hereby authorized as compensation for, in consideration for, and solely on account of, the agreement of the DIP Lenders to make new extensions of credit under the DIP Credit Agreement.

(c)    The Debtors are authorized and directed to remit to the DIP Agent immediately upon the Debtors' receipt thereof or otherwise in accordance with the Debtors' current practices all Cash Collateral in its possession or control arising from, or constituting proceeds of, the Collateral (including Prepetition Collateral) and all Cash Collateral so remitted shall be applied, first, to the Prepetition Obligations, until such Prepetition Obligations are indefeasibly paid in full and completely satisfied, and then to the DIP Obligations. The DIP Agent is hereby authorized, as of the Effective Date, to (i) send a notice to each Receivables Account Bank (as defined in the DIP Domestic Security Agreement) to commence a period during which the applicable Receivables Account Bank shall cease complying with any instructions originated by any applicable Debtor and shall comply with instructions originated by the DIP Agent directing dispositions of funds, without further consent of the applicable Debtor, and (ii) apply (and allocate) the funds in each Receivables Account (as defined in the DIP Domestic Security Agreement) pursuant to sections 2.09(b) and (c) of the DIP Credit Agreement without further order or approval of this Court. Each Receivables Account Bank is hereby

DB02:8032346.4                                    068136.1001

authorized to comply with any instructions originated by the DIP Agent on or after the Effective

Date directing disposition of funds, without further consent of the applicable Debtor or further

order or approval of this Court, and is further authorized to comply with any instructions

delivered by the DIP Agent or the Prepetition Agent to such Receivables Account Bank prior to

the Effective Date directing disposition of funds, without further consent of the applicable

Debtor or further order or approval of this Court. As of the Effective Date, each "Deposit

Account Control Agreement" and "Receivables Account Control Agreement" (as each such term

is defined in the Domestic Security Agreement) will continue and remain in full force and effect,

in each case substituting the DIP Agent as the secured party thereunder in place of the

Prepetition Agent. The automatic stay is hereby modified and vacated to permit such actions as

contemplated by this paragraph 9. Except as otherwise provided herein or in the "first day"

order relating thereto, the Debtors shall maintain their pre-Petition Date cash management and

accounts receivable collection system, including the Collateral Accounts (as defined below)

associated therewith.

     10.    *Superpriority Claims.*

     (a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP

Obligations shall constitute allowed senior administrative expense claims against the Debtors

with priority over any and all administrative expenses, diminution claims (including all Adequate

Protection Obligations (as defined below)) and all other claims against the Debtors, now existing

or hereafter arising, of any kind whatsoever, including, without limitation, all administrative

expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over

any and all administrative expenses or other claims arising under sections 105, 326, 328, 330,

19

331, 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, any successor trustee or any creditor, in these Cases or any subsequent proceedings under the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out to the extent specifically provided for herein.

(b)     For purposes of this Order, the "**Carve Out**" means (i) the unpaid fees and interest due and payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not exceeding $25,000 in the aggregate; and (iii) after the occurrence of an "**Event of Default**" (as defined in the DIP Credit Agreement), the payment of allowed and unpaid professional fees and disbursements incurred after the occurrence of such Event of Default by (a) the Debtors in an amount not to exceed $750,000 (but excluding any fees incurred on behalf of Jefferies & Company, Inc., which fees shall be payable upon consummation of a sale or transaction as governed by the terms of the engagement approved by the Court) and (b) the Creditors' Committee in an aggregate amount not to exceed $250,000 (in each case, other than any such fees and disbursements incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Agent or the Prepetition Revolving Lenders); *provided* (a) that the dollar limitation in this clause (iii) on fees and expenses shall

20

neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid before the occurrence of an Event of Default in respect of which the Carve Out is invoked or by any fees, expenses, indemnities or other amounts paid to the Prepetition Agent, Prepetition Lenders or their respective attorneys and agents, and (b) that nothing herein shall be construed to prejudice any objection to any of the fees, expenses, reimbursement or compensation described in clauses (x) and (y) above.

11.    *DIP Liens.*

As security for the DIP Obligations, effective and perfected upon the Effective Date and without the necessity of the execution or recordation of filings by the Debtors, of security agreements, pledge agreements, fixture filings, mortgages, hypothecs, deeds of trust, control agreements, financing statements or other similar documents, or the possession or control by the DIP Agent, any DIP Lender or any other "Secured Parties" (as such term is defined in the DIP Domestic Security Agreement, hereinafter referred to as the **"DIP Secured Parties"**) of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Secured Parties (all property identified in clauses (a), (b) and (c) below being collectively referred to as the **"DIP Collateral"**), subject only to the payment of the Carve Out as set forth in this Order (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Secured Parties, pursuant to this Order and the DIP Documents, the **"DIP Liens"**):

(a)    First Lien on Cash Balances and Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and postpetition property

21

of the Debtors, wherever located, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, **"Unencumbered Property"**), including without limitation, any and all cash and cash collateral of the Debtors (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral and any and all inventory, accounts receivable, any other right to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries and the proceeds of all the foregoing.   Unencumbered Property shall not include the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, **"Avoidance Actions"**); *provided* that, subject to and effective upon entry of the Final Order, Unencumbered Property shall include the  proceeds of Avoidance Actions and property received thereby whether by judgment, settlement or otherwise.

(b)     Liens Priming Prepetition Secured Parties' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and postpetition property of the Debtors (including, without limitation, Cash Collateral), inventory, accounts receivable, any other right to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing), wherever located

22

and whether now existing or hereafter acquired, that is presently subject to any lien or security interest granted to (a) the Prepetition Agent (for the ratable benefit of the "Secured Parties" (as such term is defined in the Domestic Security Agreement but excluding the Prepetition Term Lender, hereinafter referred to as the **"Prepetition Revolving Secured Parties"**)) under and in connection with any Prepetition Security Document (the **"Prepetition Revolving Lender Liens"**), (b) the Prepetition Agent (for the benefit of the Prepetition Term Lender) under and in connection with any Prepetition Security Document (the **"Prepetition Term Lender Liens"**) and (c) the Prepetition Indenture Trustee (for the ratable benefit of the Prepetition Secured Noteholders) under and in connection with the Prepetition Indenture (and any security documents related thereto) (the **"Prepetition Secured Noteholder Liens"**) (the Prepetition Revolving Lender Liens, the Prepetition Term Lender Liens and the Prepetition Secured Noteholder Liens collectively, the **"Prepetition Liens"**).  Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including, without limitation, Adequate Protection Liens (as defined below) granted hereunder as adequate protection), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Prepetition Secured Parties become or became subject to subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)    Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in

23

and lien upon all pre- and postpetition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 11, as to which the liens and security interests in favor of the DIP Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date (other than the Prepetition Liens, which shall be governed by paragraph 11(b)) or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which liens in favor of the DIP Agent are junior to such valid, perfected and unavoidable liens.

(d)     Liens Senior to Certain Other Liens.  The DIP Liens shall not be (a) subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or any liens arising after the Petition Date including, without limitation, subject to and effective upon entry of a Final Order, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors to the extent permitted by applicable law or (b) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

(e)     Notwithstanding anything to the contrary contained herein, the Court reserves the right to unwind, after notice and a hearing, the DIP Liens, or a portion thereof (which might include the disgorgement or re-allocation of interest, fees or other consideration paid in respect thereof) granted to secure any Prepetition Obligations that are converted to DIP Obligations in accordance with the DIP Documents and this Order or the Final Order, as applicable, solely in the event that there is a timely successful challenge, pursuant and subject to

24

the limitations contained in paragraphs 20 and 21, to the validity, enforceability, extent or perfection of the liens securing the Prepetition Obligations and only to the extent that the Court finds that, in light of such timely successful challenge, the DIP Liens unduly advantaged the Prepetition Revolving Lenders and the Prepetition Agent at the expense of other creditors of the Debtors or their estates. For the avoidance of doubt, the DIP Liens granted to secure any revolving loans or other extensions of credit made under the DIP Credit Agreement that are not Prepetition Obligations converted to DIP Obligations shall not be subject to challenge at any time during the Cases (or any subsequent case) and shall have the protections set forth in this Order and the DIP Documents regardless of whether there is a timely successful challenges to the validity, enforceability, extent or perfection of the liens securing the Prepetition Obligations.

12.    *Protection of DIP Secured Parties' Rights.*

(a)    So long as there are any borrowings or letters of credit or other amounts (other than (A) contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid and (B) letters of credit outstanding under the DIP Credit Agreement which have been cash collateralized or supported with backstop letters of credit in accordance with the terms of the DIP Credit Agreement) outstanding under the DIP Credit Agreement, or the DIP Lenders have any **"Commitment"** (as defined in the DIP Credit Agreement), the Prepetition Term Lender, the Prepetition Indenture Trustee and the Prepetition Secured Noteholders shall (i) take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Security Documents, the Prepetition Indenture (and any security documents related thereto) or this Order, or otherwise exercise remedies against any DIP Collateral, (ii) be deemed to have consented to any release of Collateral

25

authorized under the DIP Documents and (iii) not file any further financing statements,

trademark filings, copyright filings, mortgages, hypothecs, fixture filings, deeds of trust, notices

of lien or similar instruments, or otherwise take any action to perfect their security interests in

the Collateral unless, solely as to this clause (iii), the DIP Agent files any financing statement or

other document to perfect the liens granted pursuant to this Order, or as may be required by

applicable state law to continue the perfection of valid and unavoidable liens or security interests

as of the Petition Date.

        (b)     The automatic stay provisions of section 362 of the Bankruptcy Code are

vacated and modified to the extent necessary to permit the DIP Agent, any DIP Lender and any

other DIP Secured Party to exercise and enforce, upon the occurrence and continuance of an

Event of Default and the giving of five business days' notice to the Debtors, the Prepetition Term

Lenders and the Prepetition Indenture Trustee (with a copy to lead counsel for the Creditors'

Committee and to the United States Trustee), all rights and remedies against the DIP Collateral

under the DIP Documents (including, without limitation, the right to setoff monies of the Debtors

in accounts maintained with the DIP Agent, any DIP Secured Party or any affiliate thereof).  In

any hearing regarding any exercise of rights or remedies, the only issue that may be raised by

any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is

continuing, and, subject to and effective upon entry of the Final Order, each of the Prepetition

Term Lender, the Prepetition Indenture Trustee and the Prepetition Secured Noteholders hereby

waives its right to seek relief, including, without limitation, under section 105 of the Bankruptcy

Code, to the extent such relief would in any way impair or restrict the rights and remedies of the

DIP Agent, any DIP Secured Party or any affiliate thereof set forth in this Order or the DIP

26

                                                        

Documents.  In no event shall the DIP Agent, the DIP Secured Parties, the Prepetition Agent or

the Prepetition Revolving Secured Parties be subject to the equitable doctrine of "marshaling" or

any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral.  The delay or

failure of the DIP Agent or any DIP Secured Party to seek relief or otherwise exercise or enforce

its rights and remedies under the DIP Documents or this Order shall not constitute a waiver of

the DIP Agent's or any DIP Secured Party's rights or remedies hereunder, thereunder or

otherwise.

  13.  *The Cash Collateral.*  To the extent any funds were on deposit with any

Prepetition Secured Party as of the Petition Date, including all funds deposited in, or credited to,

an account of any Debtor with any Prepetition Secured Party immediately before the Debtors

commenced these Cases (regardless of whether, as of such time, such funds had been collected

or made available for withdrawal by any such Debtor), such funds (the **"Deposited Funds"**) are

subject to rights of setoff in favor of the Prepetition Secured Parties.  By virtue of such setoff

rights, the Deposited Funds are subject to a lien in favor of such Prepetition Secured Party,

giving rise to a secured claim pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The

Prepetition Secured Parties are obligated, to the extent provided in the Prepetition Loan

Documents, the Prepetition Indenture (and any security documents related thereto) and the

Intercreditor Agreement (together, the **"Existing Documents"**) to share the benefit of such setoff

rights with the other Prepetition Secured Parties that are party to or are otherwise beneficiaries of

such documents.  The Debtors' cash, including all cash and other amounts on deposit or

maintained in any account subject to a control agreement with the Prepetition Agent (or any

successor or replacement agent thereto) or the Prepetition Indenture Trustee or in the

27

               068136.1001

concentration accounts maintained with the Prepetition Agent (or any successor or replacement

agent thereto or any of its affiliates) (collectively, the "**Collateral Accounts**") and any proceeds

of the Prepetition Collateral (including the Deposited Funds or any other funds on deposit at the

Prepetition Secured Parties or at any other institution as of the Petition Date) are "cash

collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the

Bankruptcy Code. The Debtors' cash, if any, the Deposited Funds, if any, the funds in the

Collateral Accounts, if any, and all such proceeds of Prepetition Collateral, if any, are referred to

herein as "**Cash Collateral**."

      14.     *Use of Cash Collateral.* The Debtors are authorized to use all Cash Collateral

of the Prepetition Secured Parties during the period from the date of this Order through and

including the "**Termination Date**" (as defined in the DIP Credit Agreement), *provided* that the

Prepetition Secured Parties are granted adequate protection as hereinafter set forth. The Debtors'

right to use the Cash Collateral shall terminate automatically on the Termination Date. In

addition, if any Borrower voluntarily terminates the Commitments prior to the "**Maturity Date**"

(as each such term is defined in the DIP Credit Agreement) and all DIP Obligations are

indefeasibly paid in full in cash (and, with respect to letters of credit outstanding under the DIP

Credit Agreement, cash collateralized or supported with backstop letters of credit in accordance

with the terms of the DIP Credit Agreement), the Debtors shall, for the benefit of the Prepetition

Secured Parties, continue to comply with the requirements of Articles V and VI of the DIP

Credit Agreement and, upon any failure by the Debtors to observe any such requirement or upon

the occurrence of any event that would have constituted an Event of Default under the DIP

Credit Agreement prior to the termination of the Commitments, the Prepetition Agent on behalf

**28**

of the Prepetition Secured Parties shall have the immediate right unilaterally to terminate the Debtors' right to use Cash Collateral. Notwithstanding anything to the contrary contained in the Interim Cash Collateral Order, the Debtors' right to use Cash Collateral shall be governed by the terms of this Order from and after the date hereof.

15.    *Adequate Protection.* The Prepetition Secured Parties are entitled, under sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral, including any such diminution resulting from (w) the use of the Cash Collateral under section 363(c) of the Bankruptcy Code, (x) the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral, (y) the priming of the Prepetition Secured Parties' security interests and liens in the Prepetition Collateral by the DIP Agent and the DIP Secured Parties pursuant to the DIP Documents and this Order and (z) the imposition of the automatic stay under section 362 of the Bankruptcy Code (the amount of any such diminution being referred to hereinafter as the "**Adequate Protection Obligations**"). As adequate protection, the Debtors hereby grant the following:

(a)    <u>Adequate Protection Liens</u>. The Prepetition Agent (for itself and the ratable benefit of the Prepetition Revolving Secured Parties and the Prepetition Term Lender) and the Prepetition Indenture Trustee (for the ratable benefit of the Prepetition Secured Noteholders) are hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution by the Debtors of security agreements, pledge agreements, fixture filings, mortgages, hypothecs, deeds of trust, control agreements, financing statements or other

29

agreements) a valid, binding, enforceable and perfected replacement security interest in, and lien on, all of the DIP Collateral, subject and subordinate only to (i) the DIP Liens and liens on the DIP Collateral that are senior to, or *pari passu* with, the DIP Liens and (ii) the Carve Out (the "**Adequate Protection Liens**").   The Adequate Protection Liens granted hereunder shall be junior to the DIP Liens.  The Adequate Protection Liens granted hereunder to the Prepetition Indenture Trustee, for the ratable benefit of the Prepetition Secured Noteholders, shall be immediately junior in priority and subject to the Adequate Protection Liens granted to the Prepetition Agent, for the ratable benefit of the Prepetition Revolving Secured Parties and the Prepetition Term Lenders, and the Adequate Protection Liens granted hereunder to the Prepetition Secured Parties shall otherwise rank in the same relative priority and right (including with respect to payment of distributions) both as among the Prepetition Lenders and vis-à-vis the Prepetition Secured Noteholders as such parties' respective prepetition liens and security interests do with respect to the Prepetition Collateral as of the Petition Date under the Prepetition Loan Documents, the Prepetition Indenture (and any security documents related thereto) and the Intercreditor Agreement, including, for the avoidance of doubt, with respect to those terms of the Prepetition Loan Documents that provide that the Prepetition Term Lender, the Prepetition Indenture Trustee and the Prepetition Secured Noteholders shall have no right to seek or exercise any rights or remedies in respect of the Adequate Protection Liens granted herein (whether in these Cases or any subsequently converted cases) until all DIP Obligations owing to the DIP Agent, the DIP Secured Parties and their respective affiliates and all Adequate Protection Obligations owing to the Prepetition Agent, the Prepetition Revolving Secured Parties and their

30

affiliates have been indefeasibly paid in full in accordance with the DIP Documents, the Prepetition Loan Documents and this Order;

(b)     Section 507(b) Claim.  The Prepetition Agent and the Prepetition Revolving Secured Parties (and their affiliates) are hereby granted, subject to the payment of the Carve Out on the terms specified herein and the Superpriority Claims granted herein, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code (the "**507(b) Claims**") with priority in payment over any and all administrative expenses of the kinds specified or ordered under any provision of the Bankruptcy Code, including sections 105, 326, 328, 330, 331, 503, 507(a), 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, any successor trustee or any creditor, in these Cases or, to the extent permitted by applicable law, any subsequent proceedings under the Bankruptcy Code. Except for the Carveout and, subject to entry of a Final Order with respect to section 506(c), the Superpriority Claims granted to the DIP Agent and the DIP Secured Parties under paragraph 10(a), subject to entry of a Final Order, no cost or expense of administration under sections 105, 503(b), 507(b) or otherwise, including any such cost or expense resulting from the conversion of these Cases under section 1112 of the Bankruptcy Code, shall be senior to, or *pari passu* with, the 507(b) Claims of the Prepetition Agent and the Prepetition Revolving Secured Parties (and their affiliates); and

(c)     Interest, Fees and Expenses.  The Prepetition Agent (for the benefit of the Prepetition Revolving Secured Parties) shall receive from the Debtors (i) on the Effective Date, payment of all accrued and unpaid interest on the Prepetition Obligations at the applicable rates specified under the Interim Cash Collateral Order, all accrued and unpaid letter of credit fees at

31

the applicable rates specified under the Interim Cash Collateral Order, all accrued and unpaid

interest on the Cash Collateral Loans outstanding under the Interim Cash Collateral Order at the

rates specified therein and all other accrued and unpaid fees and disbursements incurred before

the Effective Date (including, but not limited to, fees owed to the Prepetition Agent for its

counsel and financial advisors) owing under the Prepetition Loan Documents or any

unterminated Swap Agreement (as defined in the Prepetition Credit Agreement), (ii) from time to

time after the Effective Date, current cash payment of all fees and expenses payable to the

Prepetition Agent, the Prepetition Revolving Secured Parties, the issuing bank or any of their

respective affiliates under the Prepetition Loan Documents or any unterminated Swap

Agreement, including the reasonable fees and disbursements of counsel, financial advisors and

other consultants for the Prepetition Agent or the Prepetition Revolving Lenders, promptly upon

receipt of invoices therefor and (iii) on the first business day of each month, current cash

payment of (x) all accrued and unpaid postpetition interest on the Prepetition Obligations at the

rate equal to the Alternate Base Rate (as defined in the DIP Credit Agreement) plus 9.00% per

annum and (y) letter of credit and other fees at the contract rates applicable under the DIP Credit

Agreement, subject in each case to the Prepetition Agent's and Prepetition Revolving Secured

Parties' reservation of their rights to assert claims for the payment of any other amounts provided

for in the Prepetition Loan Documents and without prejudice to the rights of any other party to

contest such assertion. The Prepetition Term Lender shall receive from the Debtors on the first

business day of each month, current cash payment of (i) the reasonable legal fees, disbursements

and expenses of legal counsel for the Prepetition Term Lender incurred in connection with

monitoring the Cases or the protection of the rights and interests of the Prepetition Term Lender

32

under the Prepetition Loan Documents and (ii) other reimburseable expenses of the Prepetition Term Lender under the Prepetition Credit Agreement; *provided, however,* that the aggregate amount of fees, disbursements and expenses payable to the Prepetition Term Lender pursuant to this sentence shall not exceed $25,000 per calendar month; *provided further,* that the rights of any party to assert that any such amounts paid pursuant to this sentence should be recharacterized as payments on account of the principal amount of the Prepetition Term Obligations outstanding as of the Petition Date are hereby fully preserved. None of the fees, costs and expenses payable under this paragraph shall be subject to separate or prior approval by this Court (but the Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any motion or interim or final fee application with respect thereto. Nothing contained herein shall be deemed to be a waiver by any party in interest of the right to object to the reasonableness of any fees, costs and charges incurred by the Prepetition Revolving Secured Parties, the Prepetition Term Lender or the Prepetition Agent. The Debtors shall provide to the Creditors' Committee and the Office of the United States Trustee, immediately upon receipt thereof, a copy of the monthly invoices for the Prepetition Agent's professionals and for the fees and expenses requested by the Prepetition Term Lender, and the Debtors are authorized and directed to make payment to the professional retained by the Prepetition Agent or the Prepetition Term Lender (or its counsel) unless, within ten days after receipt of the invoice by the Debtors, a written objection has been received by the Debtors and the applicable professional retained by the Prepetition Agent or the Prepetition Term Lender (or its counsel), as the case may be, in which case the Debtors are hereby authorized and directed to make payment on account of any amounts which are not

33

clearly identified as being contested in such written objection and, upon resolution of such objection, the remaining unpaid amounts that have been agreed or ordered to be paid.

16.    *Limitation on Charging Expenses Against Collateral.*  Subject only to and effective upon entry of the Final Order, except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or DIP Collateral under section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Secured Parties, the Prepetition Agent or the Prepetition Revolving Secured Parties.

17.    *Reservation of Rights of the Prepetition Secured Parties.*  The Court finds that the adequate protection provided herein is reasonable and sufficient under the circumstances to protect the interests of the Prepetition Secured Parties.  Notwithstanding any other provision, the grant of adequate protection to the Prepetition Secured Parties is without prejudice to the Prepetition Agent's right to request any modification of, or further or different, adequate protection, and the Debtors' or any other party's objection to any such request; *provided* that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agent and the DIP Secured Parties granted under this Order and the DIP Documents.

34

18. *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    The DIP Agent and the Prepetition Agent are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, hypothecs, fixture filings, deeds of trust, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. The DIP Liens and Adequate Protection Liens granted under this Order shall constitute valid and duly perfected security interests and liens, and the DIP Secured Parties and the Prepetition Secured Parties are hereby not required to file or record financing statements, trademark filings, copyright filings, mortgages, hypothecs, fixture filings, deeds of trust, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens, and such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, as of the Effective Date. The failure of the Debtors to execute any documentation relating to the enforceability, priority or perfection of the DIP Liens or Adequate Protection Liens shall in no way affect the validity, perfection or priority of the DIP Liens or Adequate Protection Liens, as applicable.

(b)    If the Prepetition Agent (on behalf of the Prepetition Revolving Secured Parties) or the DIP Agent (on behalf of the DIP Secured Parties), in their individual and sole discretion, elects to file any financing statements, trademark filings, copyright filings, mortgages, hypothecs, fixture filings, deeds of trust, notices of lien or similar instruments, or otherwise to confirm perfection of such DIP Liens or Adequate Protection Liens, the Debtors shall cooperate

35

068136.1001

with and assist in such process, the stay imposed under section 362 of the Bankruptcy Code is hereby lifted to permit the filing and recording of a certified copy of this Order or any such financing statements, trademark filings, copyright filings, mortgages, hypothecs, fixture filings, deeds of trust, notices of lien or similar instruments, and all such documents shall be deemed to have been filed and recorded at the time of and on the Effective Date. Any error, omission or other defect in any such filing shall not affect the validity, enforceability, priority or perfection of any DIP Lien or Adequate Protection Lien granted under this Order.

(c)    A certified copy of this Order may, in the discretion of the Prepetition Agent (on behalf of the Prepetition Revolving Secured Parties) or the DIP Agent (on behalf of the DIP Secured Parties), be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, hypothecs, fixture filings, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

19.    *Preservation of Rights Granted Under the Order.*

(a)    No claim or lien having a priority superior to or *pari passu* with those granted by this Order to the DIP Agent, the DIP Secured Parties, the Prepetition Agent or the Prepetition Revolving Secured Parties shall be granted or allowed while any portion of the Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding (or, with respect to any letters of credit outstanding under the DIP Credit Agreement, such letters of credit are neither cash collateralized nor supported with a backstop letters of credit in accordance with the terms of the DIP Credit Agreement). Except as otherwise provided in this Order, the Adequate Protection Liens shall not

36

be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (y) subordinated to or made *pari passu* with any other lien or security interest, whether under sections 363 or 364 of the Bankruptcy Code or otherwise.

(b)     Unless all DIP Obligations shall have been indefeasibly paid in full and all Commitments terminated (and, with respect to letters of credit outstanding under the DIP Credit Agreement, cash collateralized or supported with backstop letters of credit in accordance with the terms of the DIP Credit Agreement), all Prepetition Obligations shall have been indefeasibly paid in full, and the Adequate Protection Obligations shall have been indefeasibly paid in full, the Debtors shall not seek (i) any order modifying or extending this Order without the prior written consent of the DIP Agent (or, to the extent the DIP Obligations shall have been indefeasibly paid in cash in full (and, with respect to letters of credit outstanding under the DIP Credit Agreement, cash collateralized or supported with backstop letters of credit in accordance with the terms of the DIP Credit Agreement) and the Commitments shall have been terminated, the Prepetition Agent) and no such consent shall be implied by any other action, inaction or acquiescence, (ii) any order modifying or extending this Order adversely affecting the adequate protection provided to the Prepetition Secured Parties without the prior written consent of the Prepetition Secured Parties or (iii) an order converting or dismissing any of the Cases. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, the 507(b) Claims, DIP Liens and Adequate Protection Liens granted to the DIP Agent and the DIP Secured Parties and, as applicable, the

37

Prepetition Secured Parties pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations, Prepetition Obligations and Adequate Protection Obligations shall have been indefeasibly paid in cash and satisfied in full (and, with respect to letters of credit outstanding under the DIP Credit Agreement, cash collateralized or supported with backstop letters of credit in accordance with the terms of the DIP Credit Agreement) and the Commitments shall have been terminated (and that such Superpriority Claims, 507(b) Claims, DIP Liens and Adequate Protection Liens remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above, to the fullest extent authorized by statute.

(c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity, priority or enforceability of any DIP Obligations or any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent, the Prepetition Agent or the Prepetition Indenture Trustee, as applicable, of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any DIP Obligations or Adequate Protection Obligations. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Secured Parties or the Prepetition Secured Parties prior to the actual receipt of written notice by the DIP Agent, the Prepetition Agent or the Prepetition Indenture Trustee, as applicable, of the effective date of such

38

reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in sections 363(m) and 364(e) of the Bankruptcy Code and this Order with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)    Except as expressly provided in this Order or the DIP Documents, the DIP Liens, the Adequate Protection Liens, the Superpriority Claims, the 507(b) Claims, the DIP Obligations, the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of the Cases or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations pursuant to the Financing.  The terms and provisions of this Order shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the Superpriority Claims, the 507(b) Claims, the DIP Obligations, the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Order shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full (and, with respect to letters of credit outstanding under the DIP Credit Agreement, cash collateralized or supported

39

with backstop letters of credit in accordance with the terms of the DIP Credit Agreement), the Commitments are terminated and the Adequate Protections Obligations are indefeasibly paid in full.

20.     *Effect of Stipulations on Third Parties.* The stipulations and admissions contained in this Order, including in paragraph 6 of this Order, shall be binding upon the Debtors and any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected in any of the Cases) in all circumstances, unless a chapter 7 or chapter 11 trustee is appointed or elected during the Investigatory Period (as defined below). The stipulations and admissions contained in this Order, including in paragraph 6 of this Order, shall be binding upon all other parties in interest, including the Creditors' Committee, unless (a) a party in interest, including any subsequently appointed chapter 7 or chapter 11 trustee and the Creditors' Committee, has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 21) by no later than the date that is 60 days after the entry of this Order (or such later date (x) as has been agreed to, in writing, (A) with respect to such adversary proceedings or contested matters relating to the Prepetition Obligations or the Prepetition Agent's or the Prepetition Revolving Secured Parties' liens on the Prepetition Collateral, by the Prepetition Agent in its sole discretion or (B) with respect to such adversary proceedings or contested matters relating solely to the Prepetition Term Obligations or the Prepetition Term Lender's liens on the Prepetition Collateral, by the Prepetition Term Lender in its sole discretion, or (y) as has been ordered by the Court for good cause shown) (such period, the "**Investigatory Period**") (i) challenging the validity, enforceability, priority or extent of the Prepetition Obligations, the Prepetition Term Obligations or the Prepetition Agent's, the

40

Prepetition Revolving Secured Parties' or the Prepetition Term Lender's liens on the Prepetition

Collateral or (ii) otherwise asserting or prosecuting any Avoidance Action or any other any

claims, counterclaims or causes of action, objections, contests or defenses (collectively, "**Claims**

**and Defenses**") against the Prepetition Agent, the Prepetition Term Lender or any of the

Prepetition Revolving Secured Parties or their affiliates, subsidiaries, members, representatives,

attorneys or advisors in connection with matters related to the Prepetition Loan Documents, the

Prepetition Obligations, the Prepetition Term Obligations or the Prepetition Collateral, as

applicable, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or

claim in any such timely filed adversary proceeding or contested matter. If no such adversary

proceeding or contested matter is timely filed, (x) the Prepetition Obligations and Prepetition

Term Obligations shall constitute allowed secured claims in the amounts set forth in paragraph 6

of this Order, not subject to counterclaim, setoff, subordination, recharacterization, defense or

avoidance, for all purposes in the Cases and any subsequent chapter 7 cases, (y) the Prepetition

Agent's, the Prepetition Revolving Secured Parties' and the Prepetition Term Lender's liens on

the Prepetition Collateral shall be deemed to have been, as of the Petition Date, enforceable,

legal, valid, binding and perfected, and having the priority set forth in paragraph 6, not subject to

recharacterization, subordination or avoidance and (z) the Prepetition Obligations and the

Prepetition Term Obligations, the Prepetition Agent's, the Prepetition Revolving Secured

Parties' and the Prepetition Term Lender's liens on the Prepetition Collateral and the Prepetition

Agent, the Prepetition Revolving Secured Parties and the Prepetition Term Lender shall not be

subject to any other or further challenge by any party in interest seeking to exercise the rights of

the Debtors' estates, including any estate representative or any other successor to the Debtors

41

(including any chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph 6 of this Order shall nevertheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any official committee (including the Creditors' Committee) and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Except for the statutory rights of any chapter 11 or chapter 7 trustee, nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Obligations or Prepetition Term Obligations.

21.      *Limitation on Use of Collateral.* The Debtors have waived any and all claims and causes of action against the DIP Agent and the DIP Secured Parties and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, directly related to the Financing, this Order or the negotiation of the terms thereof. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, proceeds of letters of credit under the DIP Credit Agreement, Cash Collateral, DIP Collateral or the Carve Out may be used for any of the following without the prior written consent of each affected party: (a) to object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this Order, the DIP Documents, the Prepetition Loan Documents, or the liens or claims granted under this Order, the DIP Documents or the Prepetition Loan Documents, (b) to assert any Claims or Defenses or causes of action against the

42

DIP Agent, the Prepetition Agent, the Prepetition Term Lender or the Prepetition Revolving Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) to prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Order, (d) to seek to modify any of the rights granted to the DIP Agent, the DIP Secured Parties, the Prepetition Agent, the Prepetition Term Lender or the Prepetition Revolving Secured Parties hereunder or under the DIP Documents or the Prepetition Loan Documents or (e) pay any amount on account of any claims arising before the Petition Date unless such payments are approved by an Order of this Court; *provided* that up to $50,000 of Cash Collateral and proceeds of the Financing in the aggregate may be used to pay the allowed fees and expenses of professionals retained by the Creditors' Committee incurred directly in connection with investigating, but not initiating or prosecuting, any Claims and Defenses against the Prepetition Agent, the Prepetition Term Lender or the Prepetition Revolving Secured Parties.

22.      *JPMorgan as DIP Agent.*  To the extent that any Prepetition Agent (or any predecessor, bailee, agent or designee thereof) is the secured party under any account control agreement, listed as loss payee under the Debtors' insurance policies as required under the Prepetition Credit Agreement or is the secured party under any other Prepetition Loan Document, JPMorgan, in its role as DIP Agent, is also deemed to be the secured party under such account control agreement, loss payee under the Debtors' insurance policies and the secured party under any other Prepetition Loan Document, shall have all rights and powers associated with that position (including, without limitation, rights of enforcement) and shall act in that

capacity and distribute any proceeds recovered or received in accordance with the DIP

Documents and this Order. The Prepetition Agent (and any predecessor, bailee, agent or

designee thereof) shall serve as agent and bailee for the DIP Agent for purposes of perfecting the

DIP Liens and the Adequate Protection Liens on all DIP Collateral that is of a type such that

perfection of a security interest therein may be accomplished only by possession or control by a

secured party.

      23.     *Priority Among Prepetition Secured Parties.* Notwithstanding anything to the

contrary herein or in any other order of this Court, in determining the relative priorities and

rights of the Prepetition Secured Parties (including, without limitation, the relative priorities and

rights of the Prepetition Secured Parties with respect to the adequate protection granted

hereunder), such relative priorities and rights shall continue to be governed by the Prepetition

Loan Documents, the Prepetition Indenture (and any security documents related thereto) and the

Intercreditor Agreement, and the adequate protection rights granted hereunder to each Prepetition

Secured Party shall have the same relative seniority and priority vis-à-vis the adequate protection

rights granted to each other Prepetition Secured Party as the pre-petition claims of such

Prepetition Secured Party have relative to the prepetition claims of such other Prepetition

Secured Party (taking into consideration whether such claims are secured and the entity against

which such claims are held or not held). Notwithstanding anything to the contrary herein or in

any other order of this Court, (i) each of the Prepetition Agent and the Prepetition Term Lender

acknowledge and agree that the intercreditor provisions of the Prepetition Credit Agreement,

including, without limitation, sections 9.24 and 9.25 of the Prepetition Credit Agreement and (ii)

each of the Prepetition Agent and the Prepetition Indenture Trustee (on behalf of the Prepetition

44

Secured Noteholders) acknowledge and agree that the terms and conditions of the Intercreditor Agreement, in each case remain in full force and effect and constitute the enforceable, valid and binding obligations of the Prepetition Agent, the Prepetition Term Lender, the Prepetition Revolving Lenders and the Prepetition Indenture Trustee (on behalf of the Prepetition Secured Noteholders), as applicable, under section 510(a) of the Bankruptcy Code; provided that the Prepetition Indenture Trustee (on behalf of the Prepetition Secured Noteholders) reserves its rights under the Intercreditor Agreement arising from a breach, if any, of the Intercreditor Agreement.  Nothing contained herein shall modify or alter the voting or consent provisions contained in the DIP Credit Agreement.

24.    *Order Governs.*  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

25.    *Binding Effect; Successors and Assigns.*  The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including the Prepetition Agent, the Prepetition Revolving Secured Parties, the other Prepetition Secured Parties, the Creditors' Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Agent, the Prepetition Revolving Secured Parties and the Debtors and their respective successors and assigns; *provided* that the Prepetition Agent and the Prepetition Revolving Secured Parties shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

26.    *Final Hearing.*  The Final Hearing shall be held on **April 27, 2009 at 2:00 p.m. (prevailing Eastern time)** before this Court.

The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of (i) a waiver of rights under section 506(c) of the Bankruptcy Code, (ii) to grant a lien on proceeds of Avoidance Actions and (iii) authority to convert the Prepetition Obligations to DIP Obligations) to the parties having been given notice of the Interim Hearing, to any other party that has filed a request for notices with this Court and to the Creditors' Committee, or its lead counsel, if the same shall have been employed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve a written objection upon Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attention: Michael Nestor, attorneys for the Debtors; Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019, Attention: Robert Trust, and Landis, Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19899, Attention: Adam Landis and Matthew McGuire, attorneys for JPMorgan Chase Bank, N.A., as Prepetition Agent; and the Office of the United States Trustee for the District of Delaware, and shall file the objection with the Clerk of the United States Bankruptcy Court, District of Delaware, in each case to allow actual receipt by the foregoing no later than **April 20, 2009 at 4:00 p.m. (prevailing Eastern time)**.

Dated:    April  9 , 2009
          Wilmington, Delaware

United States Bankruptcy Judge

46

068136.1001