## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| IH 1, Inc., *et al.*,[1] | Case No. 09-10982 (PJW) |
| Debtors. | Jointly Administered |
| | **Objection Deadline:** |
| | **Hearing Date:** |

## MOTION OF STUART MAUE FOR PAYMENT OF FEES AND EXPENSES

Stuart Maue, Fee Examiner to the Court, hereby submits this Motion for Payment of Fees and Expenses (the "Motion").  In support thereof, Stuart Maue respectfully states the following:

## BACKGROUND – UNDISPUTED FACTS

### Introduction

1. On March 20, 2009, the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code and this Court entered an Order directing the joint administration of these chapter 11 cases.

2. On July 23, 2009, the Court entered an order appointing Stuart Maue as Fee Examiner ("Order Appointing Fee Examiner") (D.E. 531) to act as special consultant to the Court for professional fee and expense analysis and to make recommendations to the Court at interim and final fee application hearings.

3. The Order Appointing Fee Examiner provided that Stuart Maue shall be compensated on an hourly basis and be reimbursed for actual and necessary expenses incurred on a direct-cost basis.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) IH 1, Inc. f/k/a Indalex Holdings Finance, Inc. (0880) ("Indalex Finance"); (ii) IH 3, Inc. f/k/a Indalex Holding Corp. (0715)("Indalex Holdings"); (iii) IH 2, Inc. f/k/a Indalex Inc (7362)("Indalex Inc."); (iv) IH 4, Inc. f/k/a Caradon Lebanon, Inc. (1208) ("Caradon"); and (v) IH 5, Inc. f/k/a Dolton Aluminum Company, Inc. (2781) ("Dolton").

4.      Stuart Maue, the Court-appointed Fee Examiner, performed services as directed by the Court from July 23, 2009 through May 31, 2010.

5.      At a hearing August 23, 2012, this Court directed that Stuart Maue be paid the full amount of the fees it was owed, $158,380.61.  A transcript of the proceedings is attached as **Exhibit A**.

6.      Unfortunately, Stuart Maue has not been paid in full and is still owed $83,043.91.

### Background Facts

7.      Pursuant to an agreed order, on October 30, 2009 ("the Conversion Date"), the Debtors' cases converted from chapter 11 to chapter 7.

8.      The Fee Examiner was not a party to the settlement discussions or agreement (the "Agreed Order") regarding conversion of these cases.  See **Exhibit A**, page 11, lines 15-16.

9.      Further, as this Court found, the Fee Examiner "is not -- his rights have not been addressed in the agreed order."  See **Exhibit A**, page 12, lines 18-20.

10.     The Order Appointing Fee Examiner and the duties set forth therein were never amended or altered by any party or the Court.  As the Court noted, "… You can't amend his [the Fee Examiner] retention order without an appropriate hearing and a determination as to whether that's right."  See **Exhibit A**, page 11, lines 17-19.

11.      The Fee Examiner, therefore, continued to perform its duties as ordered, even after the Conversion Date. See **Exhibit A**, page 11, lines 10-14.

12.     No party to these cases ever sought to terminate the Order Appointing Fee Examiner or the Fee Examiner's duties.

13.     The Trustee properly followed this Court's prior appointment of Stuart Maue; the Trustee did not seek to reject the Fee Examiner's Court appointment or the work it continued to perform and file with the Court after the Conversion Date.

14.     The Trustee was fully aware Stuart Maue's fee examination work continued through May 31, 2010.

15.    On June 15, 2012, this Court approved Stuart Maue's fees and expenses in the full amount of $157,640.00 and $640.61, respectively.

16.    During the August 25, 2012 hearing, this Court made it abundantly clear that its appointed Fee Examiner was to be paid in full. (See e.g., "Well, my holding is that Stuart Maue is entitled to exactly what it claims, which according to your [the Trustee's] chart is 158,380.61."; "Well, let me – I'm not going to approve anything unless: Number one, Stuart Maue is paid $158,380.61."; "I'm not going to approve any fees paid out of anywhere unless they include 158,000 for Stuart Maue"; "I'm not going to authorize you to pay anybody anything until you resolve the matter with Stuart Maue."; and "I hope my message is clear that Stuart Maue is going to be paid $158,000 and some cents."; See **Exhibit A**, page 13, lines 11-13; page 16, lines 1-2; page 17, lines 5-7; page 21 22, lines 25-1; and page 33, lines 21-22.

17.    The Trustee did make a payment to Stuart Maue for its work performed pre-Conversion Date, in the amount of $75,236.70.

18.    Stuart Maue completed its court-ordered work over four years ago.  Now, two more years have gone by, since this Court's findings were made, without full payment.

19.    Stuart Maue is still owed $83,043.91 for its court-appointed work.

## CONCLUSION

20.    This Court ordered Stuart Maue be paid in full.  To date, that has not been done.

21.    The embroiled battle between the chapter 7 Trustee and Sun wages on, but that has nothing to do with Stuart Maue or the work it performed pursuant to this Court's order, which was never amended or terminated – pre or post Conversion Date.

22.    As the Court has suggested and the Chapter 7 trustee has admitted there are several methods/options in which Stuart Maue could be made whole.

23.    No further delay in paying Stuart Maue its outstanding fees and expenses is justified or warranted.

    **WHEREFORE**, Stuart Maue respectfully requests the Court (i) grant its Motion and order the Chapter 7 Trustee to pay Stuart Maue its outstanding fees and expenses in the amount

of $83,043.91, within 30 days of entry of this Court's Order; and (ii) grant such other and further relief as this Court may deem just and proper.

DATED:  September 24, 2014                Respectfully submitted,
        Saint Louis, Missouri

                                          STONE, LEYTON & GERSHMAN
                                          A Professional Corporation


                                          By:  /s/ Howard S. Smotkin
                                              7733 Forsyth Boulevard, Suite 500
                                              St. Louis, Missouri 63105
                                              (314) 721-7011 Telephone
                                              (314) 721-8660 Facsimile
                                              hss@stoneleyton.com


                                          -and-


                                          STUART MAUE

                                          By:  /s/ John F. Theil
                                              John F. Theil, Esq.
                                              3840 McKelvey Road
                                              St. Louis, Missouri  63044
                                              (314) 291-3030  Telephone
                                              (314) 291-6546  Facsimile
                                              jtheil@smmj.com

                                              *Fee Examiner*

## Exhibit A

**Transcript of August 23, 2012 Hearing**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **IN RE:** | ) | Case No. 09-10982 (PJW) |
| | ) | (JOINTLY ADMINISTERED) |
| | ) | Chapter 7 |
| **IH 1, Inc.,** *et al.*, | ) | |
| | ) | |
| | ) | 824 Market Street |
| **Debtors.** | ) | Wilmington, Delaware 19801 |
| | ) | |
| | ) | August 23, 2012 |
| | ) | 1:59 P.M. |

TRANSCRIPT OF 1) ADVERSARY NO. 12-50713, COMPLAINT FILED BY
GEORGE L. MILLER, CHAPTER 7 TRUSTEE AGAINST KIRKLAND & ELLIS
LLP [ADV. DOCKET NO. 1]. 2) OMNIBUS MOTION OF GEORGE L. MILLER,
CHAPTER 7 TRUSTEE, FOR AN ORDER REOPENING ADVERSARY
PROCEEDINGS, VACATING AND SETTING ASIDE DEFAULT JUDGMENTS AND
APPROVING SETTLEMENT AGREEMENTS [DOCKET NO. 1880].
3) MOTION OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, TO AUTHORIZE
PAYMENT OF CHAPTER 11 PROFESSIONAL FEES FROM ESTATE FUNDS AND
FROM ESCROWED PROFESSIONAL FEE FUNDS [DOCKET NO. 1876].
BEFORE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For George L. Miller, Trustee: | Dilworth Paxson LLP |
| | By:  PETER C. HUGHES, ESQ. |
| | One Customs House, Suite 500 |
| | 704 King Street |
| | Wilmington, Delaware 19801 |
| | |
| For Sun Indalex Finance: | Morris Nichols Arsht & Tunnell, LLP |
| | By:  MATTHEW B. HARVEY, ESQ. |
| | GREGORY W. WERKHEISER, ESQ. |
| | 1201 North Market Street |
| | P.O. Box 1347 |
| | Wilmington, Delaware 19899-1347 |
| | |
| ECRO: | STEPHEN GRANT |

**TRANSCRIPTION SERVICE:**   **TRANSCRIPTS PLUS, INC.**
435 Riverview Circle
New Hope, Pennsylvania 18938
Telephone: 215-862-1115
Facsimile: 215-862-6639
e-mail CourtTranscripts@aol.com

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

TELEPHONIC APPEARANCES:

For Sun Indalex Finance:  Kirkland & Ellis, LLP
                          By:  DANIEL HODGMAN, ESQ.
                          300 North LaSalle
                          Chicago, Illinois 60654

1          THE COURT:  Please be seated.

2          MR. HUGHES:  Good afternoon, Your Honor.

3          THE COURT:  Good afternoon.

4          MR. HUGHES:  Peter Hughes, Dilworth Paxson LLP, for

5   George L. Miller, the Chapter 7 trustee.

6          Your Honor, Items 1 and 2 are resolved.

7          The only item on the agenda for today is Item Number

8   3, which is the motion of George Miller to authorize payment of

9   Chapter 11 professional fees from estate funds and from escrow

10  professional fee funds.

11         Your Honor, when this case was converted from a

12  Chapter 11 to a Chapter 7 case, the conversion order, which was

13  a negotiated order, stated that the debtor shall escrow funds

14  in an amount equal to all unpaid professional fees incurred and

15  costs advanced through the conversion date.

16         The debtors did put $866,680.48 into escrow at the

17  time of the conversion.  And shortly after the conversion,

18  certain funds that were still in the debtor's accounts were

19  turned over to the trustee.

20         The reason we're here today is that the amount put

21  into the escrow for the professional fees for the Chapter 11

22  professionals was not enough.

23         And looking only at the amount of fees and expenses

24  incurred through the conversion date, the amount that was paid

25  into the escrow was short by approximately $280,000 for

4

1  retained professionals.

2          The -- and around that time frame, well in excess of

3  that $280,000 was turned over to the trustee.

4          So, the funds that were turned over to the trustee --

5  and Sun does assert a lien on those funds -- should have been

6  paid into the fees escrow, but were not.

7          The trustee is now trying to remedy that by using the

8  funds that were turned over to him in accordance with the

9  conversion order.  Our view is that those funds should now be

10 used to pay the professional fees.

11         Sun did file an objection to our motion; we did file

12 a reply to that.  And since the time of the pleading, there has

13 been some narrowing down of the issues and some subsequent

14 events.

15         And if I may, I'd like to just address those briefly.

16         THE COURT:  Okay.

17         MR. HUGHES:  The motion originally requested the sum

18 of approximately $410,000, which included some post conversion

19 fees and expenses of Chapter 11 professionals.  We've now

20 resolved that the --

21         THE COURT:  I'm sorry.  What's the $410,000 figure?

22         MR. HUGHES:  Some of the fees were incurred up to the

23 conversion date, and some were actually incurred after the

24 conversion date.

25         And we're no longer seeking in this motion, as our

1  relief, funds that were -- fees that were incurred after the

2  conversion date.  We've narrowed it down to just fees up to --

3  incurred up to the -- fees and expenses incurred up to the

4  conversion date.  And that brings the number down from 410 to

5  280,000 with respect to retained professionals, excluding the

6  ordinary course professionals.

7           I did have a conversation earlier this week with

8  Sun's counsel where I told him we're not -- we're not going

9  after the post conversion fees.  So, we're -- I think we're

10 square on that.

11          And there is also no disagreement among Sun and the

12 trustee that the funds that are actually sitting still in the

13 escrow account, which total around $28,000, it's appropriate to

14 use those.  So, that's -- that's a narrowing of the issues for

15 today's purposes.

16          There is an additional development in that -- I

17 didn't realize until today -- that there were also ordinary

18 course professionals who incurred fees and filed Chapter 11

19 administrative claim proof of claim -- proofs of claim.  And in

20 fairness to Sun, I just raised that issue with them today.  And

21 I have discussed it briefly with their counsel.  What I would -

22 - those things add up to $58,000.  Those claims have not -- the

23 objection period has not come and gone with respect to those

24 claims.  So, in that sense, those claims are not fully

25 resolved.

1        And what I've suggested to Sun is that we deal with
2    all of the issues that were raised in the motion today, get
3    that done, and since, in fairness to them, they've -- I've only
4    raised this issue today, if they want to deal with those issues
5    in two weeks, or four weeks, or whenever it makes sense on the
6    calendar, that we'd be amenable to doing that.  We're not going
7    to try to raise that with them today and have them deal with it
8    at today's hearing.

9        Your Honor, I do have Mr. William Hominy (phonetic)
10   who is here and available to testify today; he's with the
11   accounting firm of Miller Coffey Tate.

12       MR. WERKHEISER:  Your Honor, for the record, Gregory
13   Werkheiser, Morris Nichols Arsht & Tunnell.  I'm joined at
14   counsels' table by Matthew Harvey from our firm.  I believe
15   Daniel Hodgman from the Kirkland & Ellis firm is also on the
16   phone for Sun.

17       As to the issue of the ordinary course professional
18   fees, we did just learn of that prior to the hearing today.  I
19   do appreciate counsel's courtesy and willingness to defer the
20   issue there.

21       It's not -- this procedural issue is not something we
22   have a strong view on, but that certainly needs to be deferred.
23   We'd be guided by what the Court wants to do in terms of going
24   forward today, and then dealing with that piecemeal after the
25   fact or, you know, pushing everything to some future date when

1 all those issues can be determined.

2     I just haven't had a chance to think about whether

3 they are qualitatively different than the other types of

4 professional fees and other fees that are asserted to be

5 payable from these funds.

6     Thank you, Your Honor.

7     THE COURT:  Okay.  You're saying these are ordinary

8 course professionals.

9     MR. HUGHES:  Correct, Your Honor.

10     THE COURT:  Before or after the conversion date?

11     MR. HUGHES:  Before the conversion.

12     THE COURT:  Oh, okay.

13     MR. HUGHES:  If I may, Your Honor, I'll answer any

14 preliminary questions Your Honor may have, but if there are

15 none, I would propose we move forward and that I put Mr. Hominy

16 on the stand.

17     THE COURT:  Why do we need him on the stand?  Is

18 there some dispute about the numbers?

19     MR. HUGHES:  There -- there may not be, Your Honor.

20 But I'm -- I am prepared to put on whatever proof I need for

21 the motion.

22     THE COURT:  Well, I mean you -- in the motion, you

23 said there was -- the funds available was 400 -- the initial

24 funds was 410,000, and that's been reduced to 280.

25     MR. HUGHES:  Correct.  That's --

1          THE COURT:  And how did you do that?

2          MR. HUGHES:  Well, because of the 410 --

3          THE COURT:  Hold on, please.  Let me --

4                          (Pause)

5          THE COURT:  I'm looking at the table on Page 4 of

6   your motion where it identifies a shortfall of 438,000.

7          MR. HUGHES:  Yes, Your Honor.  What -- Sun has

8   pointed out, correctly, that a portion of those fees were

9   incurred post conversion date, and there's two reasons for

10  that:

11         One, there was a fees fight with Huron where Huron

12  filed a supplemental.  They had litigation with Sun over the

13  amount of their fees, and they won.  And they filed a

14  supplemental fee application.  So, all of that was post

15  conversion work.

16         That adds up to a total of $75,000 -- well, actually

17  -- yes, that's a $75,000 number, the post conversion amount

18  that remains unpaid.

19         THE COURT:  And you --

20         MR. HUGHES:  And the second reason --

21         THE COURT:  And you -- and Sun agreed that that was

22  post conversion --

23         MR. HUGHES:  Correct.

24         THE COURT:  -- work and, therefore, they are not

25  entitled to be paid?

1    MR. HUGHES:  Well, what we're -- I think what Sun and

2 the trustee are in agreement on is that the conversion order

3 does state that what should be escrowed for professionals is

4 fees and expenses incurred through the conversion date.  And

5 there's no doubt that this portion of it was post conversion

6 date and, therefore, we're not fighting about that issue today.

7    THE COURT:  Okay.

8    MR. HUGHES:  The other --

9    THE COURT:  So, Huron is not going to get $75,000,

10 they get zero.

11    MR. HUGHES:  Huron will get its $75,000, it's just a

12 question of when.

13    And the other -- the other professional is Stuart

14 Maue, which was the examiner, the fee auditor or fee examiner.

15 Part of their work was done pre-conversion and part was done

16 post conversion.  And the post conversion part of it is

17 83,043.91, and we're not seeking to include that within the

18 scope of today's relief.

19    So, if we add those two numbers up, Your Honor --

20    THE COURT:  I don't agree with that.

21    MR. HUGHES:  Okay.

22    THE COURT:  Because -- let me just --

23                 (Pause)

24    THE COURT:  I think I'm missing some documents.  Hold

25 on.

1                          (Pause)

2              THE COURT:  Let me start with the order appointing

3   the fee examiner, and I want to read portions of that to

4   demonstrate my point as to why Stuart Maue is not covered by

5   this agreed order.

6              In Paragraph 1, it identifies Stuart Maue, it says,

7   "Stuart Maue is hereby appointed and employed as fee examiner

8   (the "fee examiner")."

9              Then at the bottom of Paragraph 2, it says, "The

10  parties subject to the terms of this order are hereinafter

11  referred to as," quote, "case professionals," closed quote.

12             In the next paragraph, the following sentence is

13  relative to this issue, "The Court has determined that in

14  conjunction with the appointment of the Fee Examiner," defined

15  term, "it is necessary to establish uniform procedures for the

16  review, allowance, and payment of fees and expenses of Case

17  Professionals," that's a defined term, "to ensure compliance,"

18  et cetera.

19             So, this document makes very clear that there's a

20  difference between the Fee Examiner, defined term, and Case

21  Professionals, defined term.

22             Now if you then look at the agreed order -- and I'll

23  note first that there was a motion by the committee to cause a

24  conversion to Chapter 7.  And there was a hearing on that -- I

25  think it was -- I forget what date, but the parties agreed to

1 try to work something out.

2          What they worked out was an agreed order converting

3 the case, and doing several other things.  And included in that

4 is the statement that you just made a while ago, Paragraph 5,

5 "The debtor shall escrow funds in the amount equal to the

6 unpaid professional fees incurred and cost advanced through the

7 conversion date."

8          I do not include the fee examiner as a professional

9 as referred to in Paragraph 5.

10          Therefore, I conclude that the agreed order has

11 nothing to do with the fee examiner and, indeed, the docket

12 sheet clearly reflects the fact that the fee examiner, after

13 conversion, was doing the same thing he was doing prior to

14 conversion.

15          This agreed order, I assume, did not -- you didn't

16 get any input from Stuart Maue on this consented order.  My

17 conclusion is he's not covered by it.  And by implication, you

18 can't amend his retention order without an appropriate hearing

19 and a determination as to whether that's right.

20          As I said, the docket sheet shows numerous entries

21 post conversion where Mr. Maue -- where Stuart Maue was working

22 in examining the fee applications of the professionals in the

23 case.  They were doing their work pursuant to that order, and I

24 don't read the agreed order as modifying their entitlement to

25 any fees.

1    MR. HUGHES:  I understand your point, Your Honor.  It

2  was not raised by Sun, and I hadn't considered that angle.  If

3  I may, I just want to check a document on this issue, if I may

4  just have a minute.

5    THE COURT:  Okay.

6    (Pause)

7    MR. HUGHES:  Your Honor, we -- as counsel for the

8  trustee, I certainly wasn't around when the order was being

9  negotiated, and they apparently did come to an agreement.

10    You know, the -- my reading of Section 5 of the order

11  was that, you know, it covered all professionals and I would --

12  I would consider Stuart Maue a professional in the sense of

13  just the common meaning of what a professional is.

14    I understand Your Honor's point.  I think if Sun

15  hadn't considered them to be within the scope of it, they would

16  have raised it in the course of getting from where we started

17  to today, and they haven't raised it.

18    THE COURT:  Well, my holding is that the fee examiner

19  is not -- his rights have not been addressed in the agreed

20  order.

21    MR. HUGHES:  I understand, Your Honor.

22    THE COURT:  And also, I would note there's nothing in

23  the caption of the agreed order that suggests in any way that

24  professional fees are being subject to some condition.  There's

25  nothing in the caption of that order that addresses that

1  subject matter.

2         And even though -- according to the service notice,

3  even though a copy of the agreed order was sent to Stuart Maue,

4  I see no reason why they would have read anything in that

5  document beyond the heading of the document itself.

6         MR. HUGHES:  Your Honor, even -- even if that is the

7  case, there are a number of other professionals that would be

8  covered within the scope of that.  I would like to address

9  those issues:

10         We have --

11         THE COURT:  Well, my holding is that Stuart Maue is

12  entitled to exactly what it claims, which according to your

13  chart is 158,380.61.

14         MR. HUGHES:  Yes, that is their total, Your Honor.

15  And Your Honor may recall when Stuart Maue's fees were

16  approved, it wasn't too long ago, and the issue did arise

17  whether they need to be paid as a Chapter 11 administrative

18  claim, or whether they need to be paid immediately out of the

19  Chapter 7 funds.  And we've deferred that issue until this

20  motion has been determined.  By agreement between the trustee

21  and Stuart Maue, we've put that issue off.  So, I think that

22  exact issue is an issue for another day as to whether --

23  whether they're entitled to payment as a Chapter 7 professional

24  would or 11.

25         But if I may, Your Honor, I have -- the issue remains

1  with respect to all the other professionals:  Should the

2  trustee be allowed to take the funds that he has that are

3  alleged to be secured by Sun?  He's got them in hand, he wants

4  to use them to pay the other Chapter 7 -- Chapter 11, excuse

5  me, professionals.

6         Again, Mr. Hominy can testify as to the facts and the

7  figures.  I'm ready to proceed on that basis.  If you prefer

8  that I just make a proffer --

9         THE COURT:  Are the facts and figures in dispute?

10         MR. HUGHES:  I -- they may not be, Your Honor.  I

11  guess Sun could tell us that.

12         MR. WERKHEISER:  Your Honor, I don't think the actual

13  numbers -- and for the record, it's Gregory Werkheiser -- but

14  the actual numbers are in dispute.  I was sitting there, as I

15  stood up, trying to figure out what the gross amount would be

16  remaining in dispute once you backed out all of the Stuart Maue

17  fees.  Because, really, all we're talking about today is what

18  gets paid out of the escrow funds versus some other source of

19  funds.

20         And so I didn't quite finish that number, but I

21  believe based on Your Honor's ruling, the number which I think

22  was $250,000 previously would get reduced by another

23  $75,236.70, if I have that right.

24         So, unless there's a disagreement about that, I think

25  we're okay on the numbers.

1          THE COURT:  I'm not sure I understand what you just

2   said.

3          MR. WERKHEISER:  As I understand it, Your Honor,

4   based on the numbers that the trustee has in the motion, Stuart

5   Maue was owed a gross amount of $158,280.61.

6          Trustee's counsel told you just a few minutes ago

7   that we had backed out already -- I believe it was $83,043.91

8   on account of --

9          THE COURT:  Why did you back that out?

10         MR. WERKHEISER:  That was the post petition portion

11  that they had already agreed not to try to charge against this

12  fund.

13         And then based on Your Honor's ruling, the balance of

14  the $158,280.61 would not be payable pursuant to the conversion

15  order, but would be paid from other assets of the estate that

16  were available to pay those funds.

17         So, I think the gross amount in dispute under the

18  conversion order reduces further to -- I think it's $176,763.30

19  -- is that a number we all agree on?

20         MR. HUGHES:  I -- I agree conceptually.  I haven't

21  actually done the math --

22         MR. WERKHEISER:  Okay.

23         MR. HUGHES:  -- to tell you that that's the right

24  number or the wrong number.

25         MR. WERKHEISER:  So, I --

1            THE COURT:  Well, let me -- I'm not going to approve

2    anything unless:  Number one, Stuart Maue is paid $158,280.61.

3            MR. WERKHEISER:  Sure.  And maybe it helps if I frame

4    what I think the parties think is a dispute for today, which is

5    simply this conversion order created a fund, an escrow set

6    aside to pay professional fees which has come up short.  And

7    the trustee is contending that the deficiency has to be paid

8    through funds that are Sun's collateral, that there was --

9    either we're misreading the order or the order should be

10   modified so that Sun has to be responsible for paying that

11   deficiency.

12           What is not at issue today is whether people can get

13   paid from some other source or even whether claims should be

14   characterized as Chapter 7 or Chapter 11 administrative expense

15   claims.  Because I can see arguments -- we don't have a dog in

16   the fight, but I could see arguments from Stuart Maue's

17   perspective why they would say some portion of their claims

18   might be Chapter 7 administrative claims versus Chapter 11.

19           That issue, as I understand it, is not before the

20   Court today.

21           So, the only -- the only question is is whether the

22   trustee is entitled to relief that would require Sun's

23   collateral to be used to pay the universe of professionals

24   that's expressed on the chart in Paragraph 13 of their motion.

25           THE COURT:  Okay.

1          MR. WERKHEISER:  And --

2          THE COURT:  Well --

3          MR. WERKHEISER:  And Your Honor's ruling seems to

4   take Stuart Maue out of that list.

5          THE COURT:  I'm not going to approve any fees being

6   paid out of anywhere unless they include 158,000 for Stuart

7   Maue.

8          MR. WERKHEISER:  And I don't think we have a view on

9   that so long as they're not attempting to pay those funds from

10  Sun's collateral.

11         THE COURT:  So long as what?

12         MR. WERKHEISER:  They're not attempting to pay those

13  funds from Sun's collateral.  The -- Paragraph 5 of the

14  conversion order created a reserve that was a carve-out from

15  Sun's collateral to pay certain funds, and did not include

16  Stuart Maue.  The allegation of the trustee now is that Stuart

17  and Maue and other shortfalls, based on fees that were incurred

18  pre-conversion, should be payable from Sun's collateral even

19  though they were not in the budget or, in our view,

20  contemplated under the conversion order, particularly Paragraph

21  5 of that order.

22         So, that's -- that's the dispute for today.  I don't

23  think -- certainly from our perspective, we're not trying to

24  prejudice Stuart Maue's ability to take the position that they

25  are payable out of -- as a Chapter 7 administrative expense and

1  would have to be paid currently from the trustee from

2  unencumbered funds.

3          MR. HUGHES:  Your Honor, I don't want to beat this

4  issue to death, but I do want to clarify, if it's helpful.

5  It's not our intent by doing any of this to leave Stuart Maue

6  unpaid and to pay other professionals.

7          They have a portion of their fees that were incurred

8  in the Chapter 7, and a portion that were incurred in the

9  Chapter 11.  And they have agreed with us in writing that the

10 issue of when they get paid can be decided after this motion

11 that's before the Court today gets decided.

12          So, the trustee is certainly not trying to exclude

13 them or get a bunch of money and pay people and leave them

14 hanging out there, that's not --

15          THE COURT:  I'm not going to leave them hanging.  And

16 if they don't get paid --

17          MR. HUGHES:  And we won't either, Your Honor.

18          THE COURT:  If they don't get paid, then I'll

19 surcharge the other professionals.

20          MR. HUGHES:  And -- I agree with that.  They're --

21 they're -- whatever claim they have, whether it's 7 or 11, and

22 it may be that they have some of each, we'll figure that out

23 either through negotiation or through Your Honor's ruling on a

24 future day.

25          They are on the same footing as other Chapter 7 and

1  Chapter 11 parties, and there won't be any discrepancies or any

2  unfairness in the proportion in which people get paid.

3          So, I don't know -- to me, the fact that we've agreed

4  with them that we're going to decide down the road about the

5  Chapter 11 or the Chapter 7 nature of the fees, my hope is that

6  that would -- that would clear something up for Your Honor with

7  respect to what we're trying to accomplish today.  Because

8  today we're simply trying to get authorization to actually pay

9  these things out of the money that the trustee has.

10          One of the things we want is to pay Stuart Maue out

11  of the funds that we already have.  And we want to pay -- we

12  want to pay the Chapter 11 portion of it from the money that we

13  have in hand from the conversion date.

14          So, what we're proposing to do is actually pay Stuart

15  Maue at least the Chapter 11 portion of it.  And then depending

16  on Your Honor's ruling, we would deal with the Chapter 7

17  portion of it.

18          So, we're actually trying to get them paid, and not

19  the reverse.

20          THE COURT:  Well, suppose they have an administrative

21  claim in the Chapter 7 case?  That's entitled to priority over

22  Chapter 11 fees.

23          MR. HUGHES:  Yes, it is.

24          THE COURT:  I don't see what -- why we have to debate

25  this issue.

1          MR. HUGHES:  Well, we're -- the point wasn't to

2  debate it today.  The -- you know, Stuart Maue did some work

3  pre-conversion, they did some work post conversion.  They want

4  to be paid for their work as a Chapter 7 professional.

5          And the trustee points out that they, you know, they

6  were appointed as a Chapter 11 professional, that their work

7  did span the two periods, the Chapter 11 period and the Chapter

8  7 period.  And the part that was incurred as this -- during the

9  Chapter 7 period, you know, the trustee didn't ask them to do

10  anything, didn't necessarily benefit the estate, and that

11  perhaps it should all be considered a Chapter 11 claim.

12          If it is all a Chapter 11 claim, then that would

13  change the priority that they have.  They wouldn't -- they

14  wouldn't be paid on part of it as a Chapter 7 claim.

15          But in any event, no matter what happens, they've got

16  their Chapter 11 claim, and they've got the portion that was

17  incurred during the Chapter 7 period, although they weren't

18  retained by the Chapter 7 trustee.

19          But the point of paying certain professionals today

20  out -- getting authorization to pay certain professionals today

21  certainly includes Stuart Maue with respect to the portion that

22  they did pre-conversion.

23          We're not going to ask Sun to go beyond the bounds of

24  what was put in the order as far as they were supposed to --

25  the debtors were supposed to pay for what was incurred through

1  the conversion date.  And we want to do that.  And as part of

2  that, we want to get Stuart Maue paid all -- all of the fees

3  that it incurred during the Chapter 11.

4          And I think if they were here, they'd be all in favor

5  of getting paid through today's motion for the Chapter 11

6  portion of what they did.

7          And then at a later date, we'll either negotiate with

8  them or come back before Your Honor and say, "Your Honor, we

9  weren't able to work something out with them, there is still

10 this issue of whether the stuff they did during the Chapter 7

11 case should be paid now or should wait as a Chapter 11 claim."

12         But in any event, we're not going to try to stick Sun

13 with paying that portion of it because it was incurred after

14 the conversion date, which was the cutoff in the conversion

15 order, the agreed order.

16         But I think we should be getting to the result that

17 they are included within the scope of this because that does

18 get them paid, and they did do work during the Chapter 11, and

19 they are a professional.

20         So, the trustee would certainly like to see them get

21 paid out of this collateral.

22         THE COURT:  Well, I'd like to see them --

23         MR. HUGHES:  And we think that's --

24         THE COURT:  I'd like to see them get paid, too, but I

25 want to resolve this.  I'm not going to authorize you to pay

1   anybody anything until you resolve the matter with Stuart Maue.

2          MR. HUGHES:  And that's fine, Your Honor.  Maybe what

3   we do is we --

4          THE COURT:  Because I think you can make an argument

5   that even though it occurred post conversion, that it's really

6   a Chapter 11 administrative claim.  Because they were examining

7   fees post conversion that were fees incurred with respect to

8   other professionals, and that's what they were doing for the

9   Chapter 11 case.

10         MR. HUGHES:  I understand, Your Honor.  I understand

11  that point, and I think if where you're headed with that is

12  maybe that, you know, they're considered a Chapter 11 claim and

13  they get paid under the conversion order, I -- I'm not pressing

14  to go that far with respect to what Sun has to give up.

15         If Your Honor wants to make that ruling, we'd live

16  with it, and I guess Sun would have to live with it.  But we're

17  not -- we're not asking for that, and we're not pushing for

18  that.

19         Perhaps the thing to do is to put on a record today

20  with respect to these issues, and when we -- if and when we

21  come back to deal with the exact Stuart Maue issue, Your Honor

22  reserves ruling until we get to resolve the Stuart Maue issues.

23         And at that point -- at that point in time, then

24  we've resolved all the issues together.

25         THE COURT:  Okay.  Well, you're going to have to --

1        MR. HUGHES:  Then we would know -- I'm sorry.  I

2    didn't mean to interrupt, Your Honor.

3        THE COURT:  That's all right.

4        MR. HUGHES:  Then we would know the outcome with

5    respect to Stuart Maue and -- and the other professionals.

6        THE COURT:  I want to know the outcome with respect

7    to Stuart Maue before I authorize anything with respect to your

8    request.

9        MR. HUGHES:  Okay.  I understand, Your Honor.

10       May I put on a record with respect to the other

11   professionals?

12       THE COURT:  What do you need on the record?

13       MR. HUGHES:  I just -- I just -- you know, I can make

14   a proffer.  If nothing's in dispute, I'll put on a proffer.

15       THE COURT:  I assume the chart is not in dispute, and

16   that's all we need, isn't it?

17       MR. HUGHES:  It's a little more complicated than that

18   because of the pre-conversion/post conversion issue.  We've

19   sort of developed those facts as a result of Sun's objection,

20   so I would like to put those distinctions on the record, if I

21   may.

22       THE COURT:  Okay.  Why don't you proffer them?

23       MR. HUGHES:  Your Honor, William Hominy is employed

24   by Miller Coffey Tate.  If called to testify today, he would

25   testify as follows:

1        That Miller Coffey Tate was retained as the

2  accountants in this case, that he's familiar with the funds

3  held by the estate which were turned over around the time of

4  the conversion.  That the -- and I won't read the whole thing,

5  Your Honor, but I'll paraphrase it.  Paragraph 5 of the

6  conversion order generally requires the payment of professional

7  fees.  That there was an escrow established at Wilmington

8  Trust.  That the debtor deposited the sum of $866,680.48 either

9  on the conversion date or shortly before the conversion date to

10  deal with the fees escrow issue.

11        He would further testify that the amount remaining in

12  the professional fees at this time is approximately $28,282.

13        He would testify that he has reviewed the orders

14  allowing fees of retained professionals, and he's reviewed the

15  debtors' records, as far as what those professionals have been

16  paid.

17        May I hand up a chart, Your Honor?

18        THE COURT:  Yes.

19        MR. HUGHES:  It's a revised chart.

20                    (Pause)

21        MR. HUGHES:  Mr. Hominy would also testify, Your

22  Honor, that he has reviewed the fees incurred pre-conversion

23  and fees incurred post conversion by Chapter 11 professionals,

24  and that the amount of outstanding and unpaid pre-conversion

25  Chapter 11 professional fees totals $280,283.20, which takes

1  into account only retained professionals and not ordinary

2  course professionals.

3        And he would further testify that there were certain

4  amounts incurred post conversion by Huron Consulting and by

5  Stuart Maue.

6        He would further testify, Your Honor, that with

7  respect to the Miller Canfield -- Miller, Canfield, Paddock and

8  Stone, there is some discrepancy in their number which we're

9  still trying to work out with Miller Canfield.  The issue

10 there, Your Honor, is that they filed a first application, and

11 then they filed a final application.  They have a final

12 application approved, and an order has been entered on it, but

13 there's some confusion as to whether they really included in

14 their final application all of the things that were in both

15 applications.  And we are still trying to work that out, but I

16 think the swing there is somewhere on the order of ten, maybe

17 at most, $15,000.

18       Mr. Hominy would further testify that there were

19 ordinary course professionals who were used during the course

20 of the Chapter 11 case, and that the claims filed by those

21 professionals total approximately $58,000.  And the -- the

22 exact number there is $58,633.28.

23       So that, Your Honor, the net amount of fees that are

24 presently owed for work through the conversion date, not

25 including work after the conversion date, would be the

1  $280,283.20 number minus the 28,282.07 that sits in the escrow

2  account right now.  And if we add in the ordinary course

3  professionals, then we -- and we add in the 58,633.28 number.

4         And Mr. Hominy finally would testify, Your Honor,

5  that if the -- if these funds had been paid in accordance with

6  the conversion order into the professional fees escrowed, then

7  there'd be a dollar-by-dollar reduction of what was turned over

8  to the trustee at or about the time of the conversion.

9         And that concludes the proffer with respect to Mr.

10 Hominy's testimony.

11        THE COURT:  Okay.  I assume Sun has no problems with

12 that testimony.

13        MR. WERKHEISER:  Your Honor, I would ask you to keep

14 the record open with respect to the amount of the ordinary

15 course professional fees solely because we've not had a chance

16 to verify those numbers and just heard about them today.

17        So, I -- I don't need to cross-examine him now with

18 respect to that.  But since that issue may be reserved, we

19 would just ask to keep the record open as to the amount of

20 those.

21        And in the proffer, there were some statements about

22 Mr. Hominy expressing "had these things been paid in accordance

23 with the conversion order," I would just note for the record,

24 he's not a lawyer.  He's not competent to give testimony on

25 whether it was pursuant to the terms of the order or not,

1  that's the ultimate dispute we're here today on.

2        Otherwise, we have no need to cross-examine him.

3        THE COURT:  Okay.

4        MR. WERKHEISER:  Thank you.

5        MR. HUGHES:  Your Honor, I don't have any other

6  witnesses besides Mr. Hominy.  I do have some charts on paper,

7  one of which I handed to Your Honor that lays this out so it's

8  easier to follow.

9        If I may, I would suggest that we, in approximately

10 30 days, we come back to try to resolve both the Stuart Maue

11 issue, as well as the ordinary course issue.  And I don't know

12 if we want to style it as a continuation of this hearing, or

13 what we want to call it.  But I think as a practical matter, we

14 do need to come back.

15        I would throw 30 days out there.  I'm not

16 particularly -- I don't particularly mind whether it's 14 days

17 or 30 days, or 45 days, but I think we do need to come back and

18 have a further hearing.

19        THE COURT:  All right.  Why don't we pick a date?

20        MR. WERKHEISER:  Your Honor, it might make sense to

21 push the whole thing under the circumstances because I

22 understand counsel seems to be still advocating for Stuart Maue

23 to be included among those who would be paid out of the Sun

24 collateral.  And in light of Your Honor's comments and ruling

25 today, I think certainly the disposition of that might be

1  affected by what happens going forward with Stuart Maue.

2          Our position remains that they can't access the

3  collateral for that.  And I can talk about that today, but it

4  might be largely hypothetical when we don't know the other

5  issues that relate to Stuart Maue getting paid.

6          THE COURT:  Well, do you want to set a hearing date?

7          MR. WERKHEISER:  I don't -- I have no objection to

8  set a hearing date.  It's just raising the question of the

9  scope of the matters that we would push off for resolution.

10          THE COURT:  I guess we're pushing off everything

11  except the 75,000 to Huron, right?

12          MR. WERKHEISER:  I think --

13          THE COURT:  As I understand --

14          MR. WERKHEISER:  I think we were in agreement that

15  the --

16          THE COURT:  -- it, they agreed those were post

17  conversion expenses.

18          MR. WERKHEISER:  We agreed with the trustee.  Sun

19  agreed with the trustee that because the fees related to Heron

20  were post conversion, that they could not be paid out of Sun's

21  collateral for purposes of framing the issues for today.

22          We had also agreed that the post conversion Stuart

23  Maue fees could not be paid out of Sun's collateral for

24  purposes of today.

25          And I'm a little unclear where Your Honor now stands

1   on that issue.  I had understood you to say at the beginning of

2   the hearing that they were not a professional and, therefore,

3   not within the scope of the conversion order, which is

4   consistent with our views.

5          The Stuart Maue retention order, I think, referred to

6   them as an expert.  It cited the Federal Rules of Evidence for

7   the Court to hire experts and referred to them as an expert.

8          So, my view of that is that they are not a

9   professional of the parties, but were a party engaged on behalf

10  of the Court.  And then the order went on to say that they were

11  paid under 503(b) and I don't take a view whether they're

12  Chapter 7 or Chapter 11, but I don't think they're within the

13  scope of the conversion order reserve requirement in Paragraph

14  5.

15         THE COURT:  And it's very clear that the -- even the

16  -- Sun's objection identifies the parties who negotiated the

17  agreed order, and you certainly did not identify Stuart Maue.

18  I think, quite frankly, nobody thought of Stuart Maue when they

19  submitted the agreed order.

20         MR. WERKHEISER:  Your Honor, I wasn't there, so I

21  don't know specifically what was in people's minds when they

22  negotiated the agreed order, but I -- you know, having looked

23  at the Stuart Maue retention order, I think it was plausible

24  that the parties looked at that and viewed them as not a

25  professional in the sense of a committee counsel or debtor

1 counsel or financial advisor being a professional, and viewed

2 them as capable of being paid for work certainly they did post

3 conversion out of the Chapter 7 estate with the priority that

4 is applied to post conversion administrative expenses.

5        We don't have a view on that today for purposes of

6 Stuart Maue's rights to get paid or not paid.  But it seems

7 plausible to me that could have figured into the way the order

8 was drafted at the time on conversion.

9        I think part of the backdrop here is that -- and

10 maybe since we have the trustee's accountant here today, we can

11 confirm this -- our understanding of this.  But we're really

12 talking about timing.  And I think counsel said, as did Your

13 Honor, earlier in the hearing it's not a function of if these

14 folks get paid, but when.  And if they're Chapter 7 admins,

15 they are paid on a current basis.  If they're Chapter 11s, they

16 will have to await some future interim or final distribution by

17 the trustee, as I understand it, to be paid.

18        So -- but they will -- based on all the information

19 that I've seen, and I think counsel's statements today, they

20 will eventually be paid in full.

21        MR. HUGHES:  Your Honor, with respect to Stuart Maue,

22 and I don't have the document right here with me right now, but

23 I've seen it today.  I know that they were included when the

24 estimate was being made of how much was to be paid into this

25 escrow.  Stuart Maue's fees were included.

1        I, frankly, didn't come here today anticipating that
2   whether Stuart Maue was considered a professional or not a
3   professional was at all in dispute; Sun didn't raise it.   So, I
4   haven't -- I don't have with me their retention order and I
5   haven't studied the issue of whether they should be a
6   professional or not.
7        I am aware that they were included in the estimate
8   when the amount was put into escrow, which would certainly
9   suggest that the parties did consider them to be within the
10  scope of this.
11       So, what I would ask, as long as we're putting other
12  issues off and putting off -- in particular, putting Stuart
13  Maue issues off, and putting the ordinary course professionals
14  issue off, that the trustee be permitted to look at those
15  documents, look at the retention order, and present whatever
16  may be appropriate at the continued hearing with respect to
17  that issue.
18       The other issue is, Your Honor, with -- and -- and I
19  don't -- you know, I don't want this hearing to go on too much
20  longer than it already has or it needs to.  But Mr. Werkheiser
21  points out that they'll be paid no matter what, whether they're
22  Chapter 11, whether they're Chapter 7.  We all hope that's
23  true, we don't know for sure that that's true.  We don't know
24  if we'll end up with Chapter 11 claim in -- you know, being
25  short of those or not, we just don't know at this point.

1      MR. WERKHEISER:  Your Honor, I just wanted to clarify

2 one point with respect to Stuart Maue because I think counsel

3 made a representation that they were included in the estimate.

4 I don't know the answer to that.  I don't think that is a fact

5 in evidence based on the testimony that was given by counsel's

6 accountant for the trustee or the documents that are of record

7 in the case.  I just don't know the answer to that, so I would

8 ask the Court to not consider that as a fact that has been

9 established.

10      Thank you.

11      THE COURT:  Well, even if they -- obviously it's --

12 there's no proof that Stuart Maue has submitted a number.  But

13 the question is were they asked to give a number because there

14 was going to be a cutoff date beyond which they couldn't get

15 fees.  And if they were told that, they should have come in to

16 me and said, "What do we do?  Are we fired?"  I don't think I

17 would have fired them because there was a lot of pending fee

18 apps pre-conversion date that still had to be addressed by the

19 Court, but first by Stuart Maue.

20      MR. WERKHEISER:  I can certainly see the argument for

21 Stuart Maue that everything that they did after the conversion

22 date was a benefit to the Chapter 7 trustee and the Court

23 because they distilled the fee applications that had to be

24 reviewed on a final basis, and that would ultimately be paid,

25 to the extent they were not otherwise paid out of the Chapter 7

1  estate.

2          But it's not -- it's not -- so, my fight -- you know,

3  and I'm not trying to take their position one way or the other

4  on the issue.  But I think the point is there that certainly

5  Stuart Maue may have the right to look to the Chapter 7 estate

6  as a Chapter 7 administrative creditor for all their work post

7  conversion.

8          MR. HUGHES:  And, Your Honor, I'm simply asking,

9  since we're coming back anyway, to keep the record open with

10  respect to this issue.   I would like the opportunity to put a

11  -- put on a little bit further proof with respect to the Stuart

12  Maue issue.

13          THE COURT:  Then I think you should share that

14  information with Stuart Maue and they can participate in the

15  hearing.

16          MR. HUGHES:  I'll be happy to do that, Your Honor.

17          THE COURT:  Okay.

18          MR. WERKHEISER:  And, Your Honor, we'd ask to receive

19  that in advance of the hearing, too.

20          MR. HUGHES:  And we'll do that.

21          THE COURT:  Okay.  I hope my message is clear that

22  Stuart Maue is going to be paid $158,000 and some cents.  And

23  if not, I'll surcharge the other professionals on a pro rata

24  basis.

25          MR. HUGHES:  Understood, Your Honor.

34

1          THE COURT:  Anything else?

2          MR. HUGHES:  No, Your Honor.  If we can just

3   determine --

4          THE COURT:  You want a date?

5          MR. HUGHES:  -- when the -- when the continued

6   hearing would be.

7          THE COURT:  How about -- let's see.  How about

8   Monday, the 24th of September, 10:30.

9          And I assume your application will be filed some time

10  in at least early in the week of the 17th.  If you need more

11  time, tell me now, otherwise we'll stick with those dates.

12         MR. HUGHES:  And -- I'm sorry, Your Honor.  What

13  application are you referring to?

14         THE COURT:  Whatever solution you come up with.

15         MR. HUGHES:  Okay.  We're going to try to come up

16  with a solution, whether -- you know, we -- we may or may not

17  be able to do that.  I think based on what we worked out with

18  Stuart Maue, and I don't have that document in front of me, I

19  thought we gave ourselves maybe 30 days after these issues were

20  decided.

21         Maybe what we should do is push it out a little bit

22  further so that we can try to address that issue with Stuart

23  Maue.

24         THE COURT:  Okay.  Why don't we make it -- how about

25  Monday, October 15 at 10:30?

1    MR. HUGHES:  Yes, that's fine, Your Honor, with us.

2    MR. WERKHEISER:  That's okay for us, Your Honor.

3    THE COURT:  Okay.  Anything else?

4    MR. HUGHES:  That's it, Your Honor.

5    THE COURT:  Okay.  We stand in recess.

6    MR. HUGHES:  Thank you.

7    MR. WERKHEISER:  Thank you.

8    (Whereupon, at 2:51 P.M., the hearing was adjourned.)

9

10                       CERTIFICATE

11

12    I, KAREN HARTMANN, certify that the foregoing is a correct

13 transcript from the electronic sound recording of the

14 proceedings in the above-entitled matter.

15

16

17  /s/ _Karen Hartmann_     AAERT CET**D0475 Date:  August 31, 2012

18 TRANSCRIPTS PLUS, INC.

19

20

21

22

23

24

25

**$**

$15,000- 25:17
$158,000- 33:22
$158,280.61-
15:5,14 16:2
$176,763.30-
15:18
$250,000- 14:22
$28,000- 5:13
$28,282- 24:12
$280,000- 3:25
4:3
$280,283.20-
24:25 26:1
$410,000- 4:18,21
$58,000- 5:22
25:21
$58,633.28- 25:22
$75,000- 8:16,17
9:9,11
$75,236.70- 14:23
$83,043.91- 15:7
$866,680.48-
3:16 24:8

**&**

&- 6:13,15

**/**

/S/- 35:17

**1**

1- 3:6 10:6
10:30- 34:8,25
11- 3:9,12,21
4:19 5:18 13:17,
24 14:4 16:14,18
18:9,21 19:1,5,
12,15,22 20:6,7,
11,12,16 21:3,5,
11,18 22:6,9,12
24:23,25 25:20
29:12 31:22,24
11S- 30:15
13- 16:24
14- 27:16
15- 34:25
158,000- 17:6
158,380.61- 13:13
17TH- 34:10

**2**

2- 3:6 10:9
2012- 35:17
24TH- 34:8

28,282.07- 26:1
280- 7:24
280,000- 5:5
2:51- 35:8

**3**

3- 3:8
30- 27:10,15,17
34:19
31- 35:17

**4**

4- 8:5
400- 7:23
410- 5:4 8:2
410,000- 7:24
438,000- 8:6
45- 27:17

**5**

5- 11:4,9 12:10
17:13,21 24:5
29:14
503B- 29:11
58,633.28- 26:3

**7**

7- 3:5,12 10:24
13:19,23 14:4
16:14,18 17:25
18:8,21,25 19:5,
16,21 20:4,8,9,
14,17,18 21:10
29:12 30:3,14
31:22 32:22,25
33:5,6
75,000- 28:11

**8**

83,043.91- 9:17

**A**

ABILITY- 17:24
ABLE- 21:9 34:17
ACCESS- 28:2
ACCOMPLISH- 19:7
ACCORDANCE- 4:8
26:5,22
ACCORDING- 13:2,
12
ACCOUNT- 5:13
15:8 25:1 26:2
ACCOUNTANT-
30:10 32:6
ACCOUNTANTS- 24:2
ACCOUNTING- 6:11

ACCOUNTS- 3:18
ACTUAL- 14:12,14
ADD- 5:22 9:19
26:2,3
ADDITIONAL- 5:16
ADDRESS- 4:15
13:8 34:22
ADDRESSED- 12:19
32:18
ADDRESSES- 12:25
ADDS- 8:16
ADJOURNED- 35:8
ADMINISTRATIVE-
5:19 13:17 16:14,
18 17:25 19:20
22:6 30:4 33:6
ADMINS- 30:14
ADVANCE- 33:19
ADVANCED- 3:15
11:6
ADVISOR- 30:1
ADVOCATING- 27:22
AFFECTED- 28:1
AFTERNOON- 3:2,3
AGAINST- 15:11
AGENDA- 3:7
AGREE- 9:20
15:19,20 18:20
AGREED- 8:21
10:5,22,25 11:2,
10,15,24 12:19,
23 13:3 15:11
18:9 19:3 21:15
28:16,18,19,22
29:17,19,22
AGREEMENT- 9:2
12:9 13:20 28:14
ALLEGATION- 17:16
ALLEGED- 14:3
ALLOWANCE- 10:16
ALLOWED- 14:2
ALLOWING- 24:14
AMENABLE- 6:6
AMEND- 11:18
AMONG- 5:11 27:23
AMOUNT- 3:14,20,
23,24 8:13,17
11:5 14:15 15:5,
17 24:11,24
25:23 26:14,19
31:8
AMOUNTS- 25:4
ANGLE- 12:2
ANSWER- 7:13
32:4,7
ANTICIPATING-

31:1
ANYWAY- 33:9
ANYWHERE- 17:6
APPARENTLY- 12:9
APPLICATION-
8:14 25:10,11,12,
14 34:9,13
APPLICATIONS-
11:22 25:15 32:23
APPLIED- 30:4
APPOINTED- 10:7
20:6
APPOINTING- 10:2
APPOINTMENT-
10:14
APPRECIATE- 6:19
APPROPRIATE-
5:13 11:18 31:16
APPROVE- 16:1
17:5
APPROVED- 13:16
25:12
APPROXIMATELY-
3:25 4:18 24:12
25:21 27:9
APPS- 32:18
ARGUMENT- 22:4
32:20
ARGUMENTS- 16:15,
16
ARISE- 13:16
ARSHT- 6:13
ASSERT- 4:5
ASSERTED- 7:4
ASSETS- 15:15
ASSUME- 11:15
23:15 26:11 34:9
ATTEMPTING- 17:9,
12
AUDITOR- 9:14
AUGUST- 35:17
AUTHORIZATION-
19:8 20:20
AUTHORIZE- 3:8
21:25 23:7
AVAILABLE- 6:10
7:23 15:16
AWAIT- 30:16
AWARE- 31:7

**B**

BACK- 15:9 21:8
22:21 27:10,14,
17 33:9
BACKDROP- 30:9
BACKED- 14:16

15:7
BALANCE- 15:13
BASED- 14:21
15:4,13 17:17
30:18 32:5 34:17
BASIS- 14:7
30:15 32:24 33:24
BEAT- 18:3
BEGINNING- 29:1
BENEFIT- 20:10
32:22
BETWEEN- 10:20
13:20
BIT- 33:11 34:21
BOTH- 25:14 27:10
BOTTOM- 10:9
BOUNDS- 20:23
BRINGS- 5:4
BUDGET- 17:19
BUNCH- 18:13

C

CALENDAR- 6:6
CALL- 27:13
CALLED- 23:24
CAN- 7:1 14:6
16:12,15 18:10
22:4 23:13 28:3
30:10 32:20
33:14 34:2,22
CAN'T- 11:18 28:2
CANFIELD- 25:7,9
CAPABLE- 30:2
CAPTION- 12:23,25
CARVE-OUT- 17:14
CASE- 3:11,12
10:11,16,20 11:3,
23 13:7 19:21
21:11 22:9 24:2
25:20 32:7
CAUSE- 10:23
CENTS- 33:22
CERTAIN- 3:18
17:15 20:19,20
25:3
CERTAINLY- 6:22
12:8 17:23 18:12
20:21 21:20
27:25 29:17 30:2
31:8 32:20 33:4
CERTIFICATE-
35:10
CERTIFY- 35:12
CETERA- 10:18
CHANCE- 7:2 26:15
CHANGE- 20:13

CHAPTER- 3:5,9,
12,21 4:19 5:18
10:24 13:17,19,
23 14:4 16:14,18
17:25 18:8,9,25
19:1,5,12,15,16,
21,22 20:4,6,7,9,
11,12,14,16,17,
18 21:3,5,10,11,
18 22:6,9,12
24:23,25 25:20
29:12 30:3,14,15
31:22,24 32:22,
25 33:5,6
CHARACTERIZED-
16:14
CHARGE- 15:11
CHART- 13:13
16:24 23:15
24:17,19
CHARTS- 27:6
CHECK- 12:3
CIRCUMSTANCES-
27:21
CITED- 29:6
CLAIM- 5:19
13:18 18:21
19:21 20:11,12,
14,16 21:11 22:6,
12 31:24
CLAIMS- 5:22,24
13:12 16:13,15,
17,18 25:20
CLARIFY- 18:4
32:1
CLEAR- 10:19
19:6 29:15 33:21
CLEARLY- 11:12
CLOSED- 10:11
COFFEY- 6:11
23:24 24:1
COLLATERAL- 16:8,
23 17:10,13,15,
18 21:21 27:24
28:3,21,23
COME- 5:23 12:9
16:6 21:8 22:21
27:10,14,17 31:1
32:15 34:14,15
COMING- 33:9
COMMENTS- 27:24
COMMITTEE- 10:23
29:25
COMMON- 12:13
COMPETENT- 26:24
COMPLIANCE- 10:17

COMPLICATED-
23:17
CONCEPTUALLY-
15:20
CONCLUDE- 11:10
CONCLUDES- 26:9
CONCLUSION- 11:17
CONDITION- 12:24
CONFIRM- 30:11
CONFUSION- 25:13
CONJUNCTION-
10:14
CONSENTED- 11:16
CONSIDER- 12:12
31:9 32:8
CONSIDERED- 12:2,
15 20:11 22:12
31:2
CONSISTENT- 29:4
CONSULTING- 25:4
CONTEMPLATED-
17:20
CONTENDING- 16:7
CONTINUATION-
27:12
CONTINUED- 31:16
34:5
CONVERSATION- 5:7
CONVERSION- 3:12,
15,17,24 4:9,18,
23,24 5:2,4,9
7:10,11 8:9,15,
17,22 9:2,4,5,16
10:24 11:7,13,14,
21 15:14,18 16:5
17:14,20 19:13
20:3 21:1,14
22:5,7,13 23:18
24:4,6,9,23 25:4,
24,25 26:6,8,23
28:17,20,22 29:3,
13 30:3,4,8
32:21 33:7
CONVERTED- 3:11
CONVERTING- 11:2
COPY- 13:3
CORRECT- 7:9,25
8:23 35:12
CORRECTLY- 8:8
COST- 11:6
COSTS- 3:15
COULDN'T- 32:14
COUNSEL- 5:8,21
12:7 15:6 27:22
29:25 30:1,12
32:2

COUNSEL'S- 6:19
30:19 32:5
COUNSELS'- 6:14
COURSE- 5:6,18
6:17 7:8 12:16
25:2,19 26:2,15
27:11 31:13
COURTESY- 6:19
COVERED- 10:4
11:17 12:11 13:8
CREATED- 16:5
17:14
CREDITOR- 33:6
CROSS-EXAMINE-
26:17 27:2
CURRENT- 30:15
CURRENTLY- 18:1
CUTOFF- 21:14
32:14

D

DANIEL- 6:15
DATE- 3:15,24
4:23,24 5:2,4
6:25 7:10 8:9
9:4,6 10:25 11:7
19:13 21:1,7,14
24:9 25:24,25
27:19 28:6,8
32:14,18,22 34:4
35:17
DATES- 34:11
DAY- 13:22 18:24
DAYS- 27:10,15,
16,17 34:19
DEAL- 6:1,4,7
19:16 22:21 24:10
DEALING- 6:24
DEATH- 18:4
DEBATE- 19:24
20:2
DEBTOR- 3:13
11:5 15:24 8 29:25
DEBTOR'S- 3:18
DEBTORS- 3:16
20:25
DEBTORS'- 24:15
DECIDE- 19:4
DECIDED- 18:10,
11 34:20
DEFER- 6:19
DEFERRED- 6:22
13:19
DEFICIENCY- 16:7,
11
DEFINED- 10:14,

17,20,21
DEMONSTRATE- 10:4
DEPENDING- 19:15
DEPOSITED- 24:8
DETERMINATION-
11:19
DETERMINE- 34:3
DETERMINED- 7:1
10:13 13:20
DEVELOPED- 23:19
DEVELOPMENT- 5:16
DIDN'T- 5:17
11:15 14:20 20:9,
10 23:2 31:1,3
DIFFERENCE- 10:20
DIFFERENT- 7:3
DILWORTH- 3:4
DISAGREEMENT-
5:11 14:24
DISCREPANCIES-
19:1
DISCREPANCY- 25:8
DISCUSSED- 5:21
DISPOSITION-
27:25
DISPUTE- 7:18
14:9,14,16 15:17
16:4 17:22 23:14,
15 27:1 31:3
DISTILLED- 32:23
DISTINCTIONS-
23:20
DISTRIBUTION-
30:16
DOCKET- 11:11,20
DOCUMENT- 10:19
12:3 13:5 30:22
34:18
DOCUMENTS- 9:24
31:15 32:6
DOG- 16:15
DOLLAR-BY-DOLLAR-
26:7
DOUBT- 9:5
DRAFTED- 30:8

### E

EACH- 18:22
EARLIER- 5:7
30:13
EARLY- 34:10
EASIER- 27:8
ELECTRONIC- 35:13
ELLIS- 6:15
EMPLOYED- 10:7
23:23

ENGAGED- 29:9
ENSURE- 10:17
ENTERED- 25:12
ENTITLED- 8:25
13:12,23 16:22
19:21
ENTITLEMENT-
11:24
ENTRIES- 11:20
EQUAL- 3:14 11:5
ESCROW- 3:9,13,
16,21,25 4:6
5:13 11:5 14:18
16:5 24:7,10
26:1 30:25 31:8
ESCROWED- 9:3
26:6
ESTABLISH- 10:15
ESTABLISHED-
24:7 32:9
ESTATE- 3:9
15:15 20:10 24:3
30:3 33:1,5
ESTIMATE- 30:24
31:7 32:3
ET- 10:18
EVENTS- 4:14
EVENTUALLY- 30:20
28:10 32:21
EVERYTHING- 6:25
EVIDENCE- 29:6
32:5
EXACT- 13:22
22:21 25:22
EXACTLY- 13:12
EXAMINER- 9:14
10:3,7,8,14,20
11:8,11,12 12:18
EXAMINING- 11:22
22:6
EXCEPT- 28:11
EXCESS- 4:2
EXCLUDE- 18:12
EXCLUDING- 5:5
EXCUSE- 14:4
EXPENSE- 16:14
17:25
EXPENSES- 3:23
4:19 5:3 9:4
10:16 28:17 30:4
EXPERT- 29:6,7
EXPERTS- 29:7
EXPRESSED- 16:24
EXPRESSING- 26:22
EXTENT- 32:25

### F

FAIRNESS- 5:20
6:3
FAR- 20:24 22:14
24:15
FAVOR- 21:4
FEDERAL- 29:6
FEE- 3:10 8:14
9:14 10:3,7,8,14,
20 11:8,11,12,22
12:18 32:17,23
FEES- 3:9,14,21,
23 4:6,10,19,22
5:1,2,3,9,18
6:18 7:4 8:8,11,
13 9:4 10:16
11:6,25 12:24
13:15 14:17 16:6
17:5,17 18:7
19:5,22 21:2
22:7 24:7,10,12,
14,22,23,25
25:23 26:6,15
28:19,23 30:25
32:15
FIGHT- 8:11
16:16 33:2
FIGHTING- 9:6
FIGURE- 4:21
14:15 18:22
FIGURED- 30:7
FIGURES- 14:7,9
FILE- 4:11
FILED- 5:18 8:12,
13 25:10,11,20
34:9
FINAL- 25:11,14
30:16 32:24
FINALLY- 26:4
FINANCIAL- 30:1
FINE- 22:2 35:1
FIRED- 32:16,17
FIRM- 6:11,14,15
FIRST- 10:23
25:10 32:19
FOLKS- 30:14
FOLLOW- 27:8
FOLLOWING- 10:12
FOLLOWS- 23:25
FOOTING- 18:25
FOREGOING- 35:12
FORGET- 10:25
FORWARD- 6:24
7:15 28:1
FOUR- 6:5

FRAME- 4:2 16:3
FRAMING- 28:21
FRANKLY- 29:18
31:1
FRONT- 34:18
FULL- 30:20
FULLY- 5:24
FUNCTION- 30:13
FUND- 15:12 16:5
FUNDS- 3:9,10,13,
18 4:4,5,8,9 5:1,
12 7:5,23,24
11:5 13:19 14:2,
18,19 15:16 16:8
17:9,13,15 18:2
19:11 24:2 26:5
FURTHER- 15:18
24:11 25:3,6,18
27:18 33:11 34:22
FUTURE- 6:25
18:24 30:16

### G

GAVE- 34:19
GENERALLY- 24:6
GEORGE- 3:5,8
GET- 6:2 9:9,10,
11 11:16 14:22
16:12 18:10,13,
16,18 19:2,8,18
21:2,18,20,24
22:13,22 30:6,14
32:14
GETS- 14:18 18:11
GIVE- 22:14
26:24 32:13
GIVEN- 32:5
GO- 20:23 22:14
31:19
GOING- 5:8 6:6,
23 9:9 16:1 17:5
18:15 19:4 20:23
21:12,25 22:25
28:1 32:14 33:22
34:15
GONE- 5:23
GOOD- 3:2,3
GOT- 14:3 20:15,
16
GREGORY- 6:12
14:13
GROSS- 14:15
15:5,17
GUESS- 14:11
22:16 28:10
GUIDED- 6:23

**H**

HADN'T- 12:2,15
HAND- 14:3 19:13
24:17
HANDED- 27:7
HANGING- 18:14,15
HAPPENS- 20:15
28:1
HAPPY- 33:16
HARVEY- 6:14
HAVEN'T- 7:2
12:17 15:20 31:4,
5
HE'S- 6:10 11:17
14:3 24:2,14
26:24
HEADED- 22:11
HEADING- 13:5
HEARD- 26:16
HEARING- 6:8,18
10:24 11:18
27:12,18 28:6,8
29:2 30:13 31:16,
19 33:15,19 34:6
35:8
HELD- 24:3
HELPFUL- 18:4
HELPS- 16:3
HEREBY- 10:7
HEREINAFTER-
10:10
HERON- 28:19
HIRE- 29:7
HODGMAN- 6:15
HOLD- 8:3 9:24
HOLDING- 12:18
13:11
HOMINY- 6:9 7:15
14:6 23:23 24:21
25:18 26:4,22
27:6
HOMINY'S- 26:10
HONOR'S- 12:14
14:21 15:13 17:3
18:23 19:16 27:24
HOPE- 19:5 31:22
33:21
HUGHES- 3:2,4
4:17,22 7:9,11,
13,19,25 8:2,7,
20,23 9:1,8,11,
21 12:1,7,21
13:6,14 14:10
15:20,23 18:3,17,
20 19:23 20:1

21:23 22:2,10
23:1,4,9,13,17,
23 24:19,21 27:5
30:21 33:8,16,20,
25 34:2,5,12,15
35:1,4,6
HURON- 8:11 9:9,
11 25:4 28:11
HYPOTHETICAL-
28:4

**I**

IDENTIFIES- 8:6
10:6 29:16
IDENTIFY- 29:17
IMMEDIATELY-
13:18
IMPLICATION-
11:17
INC- 35:18
INCURRED- 3:14,
24 4:22,23 5:1,3,
18 8:9 9:4 11:6
17:17 18:7,8
20:8,17,25 21:3,
13 22:7 24:22,23
25:4
INDEED- 11:11
INFORMATION-
30:18 33:14
INITIAL- 7:23
INPUT- 11:16
INTENT- 18:5
INTERIM- 30:16
INTERRUPT- 23:2
ISN'T- 23:16
ISSUE- 5:20 6:4,
17,20,21 9:6
10:13 12:3 13:16,
19,21,22,25
16:12,19 18:4,10
19:25 21:10
22:21 23:18
24:10 25:9 26:18
27:11 29:1 31:5,
14,17,18 33:4,10,
12 34:22
ISSUES- 4:13
5:14 6:2,4 7:1
13:9 22:20,22,24
28:5,21 31:12,13
34:19
IT'S- 5:13 6:21
9:11 14:13 15:18
18:4,5,21 22:5
23:17 24:19 27:7,

16 28:8 29:15
30:13 32:11 33:2
ITEM- 3:7
ITEMS- 3:6

**J**

JOINED- 6:13

**K**

KIRKLAND- 6:15

**L**

LARGELY- 28:4
LATER- 21:7
LAWYER- 26:24
LAYS- 27:7
LEARN- 6:18
LEAVE- 18:5,13,15
LET'S- 34:7
LIEN- 4:5
LIGHT- 27:24
LIST- 17:4
LITIGATION- 8:12
LLP- 3:4
LONG- 13:16 17:9,
11 31:11
LONGER- 4:25
31:20
LOOK- 10:22
31:14,15 33:5
LOOKED- 29:22,24
LOOKING- 3:23 8:5
LOT- 32:17

**M**

MATH- 15:21
MATTER- 13:1
20:15 22:1 27:13
31:21 35:14
MATTERS- 28:9
MATTHEW- 6:14
MAUE- 9:14 10:4,
6,7 11:16,21
12:12 13:3,11,21
14:16 15:5 16:2
17:4,7,16,17
18:5 19:10,15
20:2,21 21:2
22:1,21,22 23:5,
7 25:5 27:10,22
28:1,5,23 29:5,
17,18,23 30:21
31:2,13 32:2,12,
19,21 33:5,12,14,
22 34:18,23
MAUE'S- 13:15

16:16 17:24 30:6,
25
MESSAGE- 33:21
MILLER- 3:5,8
6:11 23:24 24:1
25:7,9
MINDS- 29:21
MINUS- 26:1
MISREADING- 16:9
MISSING- 9:24
MODIFIED- 16:10
MODIFYING- 11:24
MONDAY- 34:8,25
MONEY- 18:13
19:9,12
MORRIS- 6:13
MOTION- 3:8 4:11,
17,25 6:2 7:21,
22 8:6 10:23
13:20 15:4 16:24
18:10 21:5
MOVE- 7:15
MUCH- 30:24 31:19

**N**

NARROWED- 5:2
NARROWING- 4:13
5:14
NECESSARILY-
20:10
NECESSARY- 10:15
NEGOTIATE- 21:7
NEGOTIATED- 3:13
12:9 29:16,22
NEGOTIATION-
18:23
NET- 25:23
NICHOLS- 6:13
NOBODY- 29:18
NOTE- 10:23
12:22 26:23
NOTHING'S- 23:14
NOTICE- 13:2
NUMBERS- 7:18
9:19 14:13,14,25
15:4 26:16
NUMEROUS- 11:20

**O**

OBJECTION- 4:11
5:23 23:19 28:7
29:16
OBVIOUSLY- 32:11
OCCURRED- 22:5
OCTOBER- 34:25
ONE- 8:11 16:2

19:10 27:7 32:2
33:3
OPEN- 26:14,19
33:9
OPPORTUNITY-
33:10
ORDER- 3:12,13
4:9 9:2 10:2,5,
10,22 11:2,10,15,
16,18,23,24 12:8,
10,20,23,25 13:3
15:15,18 16:5,9
17:14,20,21
20:24 21:15
22:13 24:6 25:12,
16 26:6,23,25
29:3,5,10,13,17,
19,22,23 30:7
31:4,15
ORDERS- 24:13
ORDINARY- 5:6,17
6:17 7:7 25:1,19
26:2,14 27:11
31:13
ORIGINALLY- 4:17
OTHERWISE- 27:2
32:25 34:11
OURSELVES- 34:19
OUTCOME- 23:4,6
OUTSTANDING-
24:24
OWED- 15:5 25:24

P

PADDOCK- 25:7
PAID- 3:24 4:6
8:25 13:17,18
14:18 15:15 16:2,
7,13 17:6 18:1,
10,16,18 19:2,18
20:4,14 21:2,5,
11,18,21,24
22:13 24:16 26:5,
22 27:23 28:5,20,
23 29:11 30:2,6,
14,15,17,20,24
31:21 32:24,25
33:22
PARAPHRASE- 24:5
PARTICIPATE-
33:14
PARTICULAR- 31:12
PARTICULARLY-
17:20 27:16
PARTIES- 10:10,
25 16:4 19:1

29:9,16,24 31:9
PARTY- 29:9
PAUSE- 8:4 9:23
10:1 12:6 24:20
PAXSON- 3:4
PAY- 4:10 14:4
15:16 16:6,23
17:9,12,15 18:6,
13 19:8,10,11,12,
14 20:20,25 21:25
PAYABLE- 7:5
15:14 17:18,25
PAYING- 16:10
20:19 21:13
PAYMENT- 3:8
10:16 13:23 24:6
PENDING- 32:17
PEOPLE- 16:12
18:13 19:2
PEOPLE'S- 29:21
PERHAPS- 20:11
22:19
PERIOD- 5:23
20:7,8,9,17
PERIODS- 20:7
PERMITTED- 31:14
PERSPECTIVE-
16:17 17:23
PETER- 3:4
PETITION- 15:10
PHONE- 6:16
PICK- 27:19
PIECEMEAL- 6:24
PLAUSIBLE- 29:23
30:7
PLEADING- 4:12
PM- 35:8
POINTED- 8:8
POINTS- 20:5
31:21
PORTION- 8:8 9:5
15:10 16:17 18:7,
8 19:12,15,17
20:16,21 21:6,13
PORTIONS- 10:3
POSITION- 17:24
28:2 33:3
POST- 4:18 5:9
8:9,14,17,22 9:5,
16 11:21 15:10
20:3 22:5,7
24:23 25:4 28:16,
20,22 30:2,4 33:6
PRACTICAL- 27:13
PRE-CONVERSION-
9:15 17:18 20:3,

22 24:22,24 32:18
PREFER- 14:7
PREJUDICE- 17:24
PRELIMINARY- 7:14
PREPARED- 7:20
PRESENT- 31:15
PRESENTLY- 25:24
PRESSING- 22:13
PREVIOUSLY- 14:22
PRIOR- 6:18 11:13
PRIORITY- 19:21
20:13 30:3
PRO- 33:23
PROBLEMS- 26:11
PROCEDURAL- 6:21
PROCEDURES- 10:15
PROCEED- 14:7
PROCEEDINGS-
35:14
PROFESSIONAL-
3:9,10,14,21
4:10 6:17 7:4
9:13 11:6,8
12:12,13,24
13:23 16:6 20:4,
6 21:19 24:6,12,
25 26:6,15 29:2,
9,25 30:1 31:2,3,
6
PROFESSIONALS-
3:22 4:1,19 5:5,
6,18 7:8 9:3
10:11,17,21
11:22 12:11 13:7
14:1,5 16:23
18:6,19 20:19,20
22:8 23:5,11
24:14,15,23 25:1,
2,19,21 26:3
31:13 33:23
PROFFER- 14:8
23:14,22 26:9,21
PROOF- 5:19 7:20
32:12 33:11
PROOFS- 5:19
PROPORTION- 19:2
PROPOSE- 7:15
PROPOSING- 19:14
PURPOSES- 5:15
28:21,24 30:5
PURSUANT- 11:23
15:14 26:25
PUSH- 27:21 28:9
34:21

PUSHING- 6:25
22:17 28:10
PUTTING- 31:11,
12,13

Q

QUALITATIVELY-
7:3
QUESTIONS- 7:14
QUOTE- 10:11

R

RAISE- 6:7 31:3
RAISED- 5:20 6:2,
4 12:2,16,17
RAISING- 28:8
RATA- 33:23
READING- 12:10
READY- 14:7
REALIZE- 5:17
REASON- 3:20
8:20 13:4
REASONS- 8:9
RECEIVE- 33:18
RECORDING- 35:13
RECORDS- 24:15
REDUCED- 7:24
14:22
REDUCES- 15:18
REDUCTION- 26:7
REFERRED- 10:11
11:9 29:5,7
REFERRING- 34:13
REFLECTS- 11:12
RELATE- 28:5
RELATIVE- 10:13
RELIEF- 5:1 9:18
16:22
REMAINING- 14:16
24:11
REMAINS- 8:18
13:25 28:2
REMEDY- 4:7
REPLY- 4:12
REPRESENTATION-
32:3
REQUEST- 23:8
REQUESTED- 4:17
REQUIRE- 16:22
REQUIREMENT-
29:13
REQUIRES- 24:6
RESERVE- 17:14
29:13
RESERVES- 22:22
RESOLUTION- 28:9

RESOLVE- 21:25 22:1,22 27:10
RESOLVED- 3:6 4:20 5:25 22:24
RESPECT- 5:5,23 14:1 19:7 20:21 22:7,14,20 23:5, 6,7,10 25:7 26:9, 14,18 30:21 31:16 32:2 33:10, 11
RESPONSIBLE- 16:10
RESULT- 21:16 23:19
RETAINED- 4:1 5:5 20:18 24:1, 14 25:1
RETENTION- 11:18 29:5,23 31:4,15
REVERSE- 19:19
REVIEWED- 24:13, 14,22 32:24
REVISED- 24:19
RIGHTS- 12:19 30:6
ROAD- 19:4
RULES- 29:6
RULING- 14:21 15:13 17:3 18:23 19:16 22:15,22 27:24

——————— S ———————
SCOPE- 9:18 12:15 13:8 21:17 28:9 29:3,13 31:10
SEATED- 3:1
SECOND- 8:20
SECURED- 14:3
SEE- 13:4 16:15, 16 19:24 21:20, 22,24 32:20 34:7
SEEKING- 4:25 9:17
SEEN- 30:19,23
SENT- 13:3
SENTENCE- 10:12
SEPTEMBER- 34:8
SERVICE- 13:2
SET- 16:5 28:6,8
SEVERAL- 11:3
SHALL- 3:13 11:5
SHARE- 33:13
SHEET- 11:12,20

SHORTFALL- 8:6
SHORTFALLS- 17:17
SHORTLY- 3:17 24:9
SHOWS- 11:20
SIMPLY- 16:5 19:8 33:8
SITS- 26:1
SITTING- 5:12 14:14
SOLELY- 26:15
SOLUTION- 34:14, 16
SOUND- 35:13
SOURCE- 14:18 16:13
SPAN- 20:7
SPECIFICALLY- 29:21
SQUARE- 5:10
STAND- 7:16,17 35:5
STANDS- 28:25
START- 10:2
STARTED- 12:16
STATE- 9:3
STATEMENT- 11:4
STATEMENTS- 26:21 30:19
STICK- 21:12 34:11
STONE- 25:8
STOOD- 14:15
STRONG- 6:22
STUART- 9:13 10:4,6,7 11:16, 21 12:12 13:3,11, 15,21 14:16 15:4 16:2,16 17:4,6, 16,24 18:5 19:10, 14 20:2,21 21:2 22:1,21,22 23:5, 7 25:5 27:10,22 28:1,5,22 29:5, 17,18,23 30:6,21, 12,19,21 33:5,11, 14,22 34:18,22
STUDIED- 31:5
STYLE- 27:12
SUBMITTED- 29:19 32:12
SUBSEQUENT- 4:13
SUGGESTED- 6:1
SUGGESTS- 12:23
SUM- 4:17 24:8

SUN- 4:5,11 5:11, 20 6:1,16 8:7,12, 21 9:1 12:2,14 14:3,11 16:10 20:23 21:12 22:14,16 26:11 27:23 28:18 31:3
SUN'S- 5:8 16:8, 22 17:10,13,15, 18 23:19 28:20, 23 29:16
SUPPLEMENTAL- 8:12,14
SUPPOSE- 19:20
SUPPOSED- 20:24, 25
SURCHARGE- 18:19 33:23
SWING- 25:16

——————— T ———————
TABLE- 6:14 8:5
TATE- 6:11 23:24 24:1
TEN- 25:16
TERM- 10:15,17, 20,21
TERMS- 6:23 10:10 26:25
TESTIMONY- 26:10, 12,24 32:5
THERE'D- 26:7
THEREFORE- 8:24 9:6 11:10 29:2
THEY'D- 21:4
THEY'LL- 31:21
THROW- 27:15
TIME- 3:17 4:2, 12 22:23 24:3,12 26:8 30:8 34:9,11
TIMING- 30:12
TODAY- 3:7,20 5:17,20 6:2,4,7, 10,18,24 9:6 12:17 14:17 16:4, 12,20 17:22 18:11 19:7,8 20:2,19,20 22:19 23:24 26:16 27:1, 25 28:3,21,24 30:5,10,19,23 31:1
TODAY'S- 5:15 6:8 9:18 21:5
TOGETHER- 22:24
TOTAL- 5:13 8:16

13:14 25:21
TOTALS- 24:25
TRANSCRIPT- 35:13
TRANSCRIPTS- 35:18
TRUST- 24:8
TRUSTEE- 3:5,19 4:3,4,7 5:12 9:2 12:8 13:20 14:2 15:4 16:7,22 17:16 18:1,12 19:9 20:5,9,18 21:20 26:8 28:18, 19 30:17 31:14 32:6,22
TRUSTEE'S- 15:6 30:10
TUNNELL- 6:13
TURNED- 3:19 4:3, 4,8 24:3 26:7
TWO- 6:5 8:9 9:19 20:7
TYPES- 7:3

——————— U ———————
ULTIMATE- 27:1
ULTIMATELY- 32:24
UNCLEAR- 28:25
UNDERSTANDING- 30:11
UNDERSTOOD- 29:1 33:25
UNENCUMBERED- 18:2
UNFAIRNESS- 19:2
UNIFORM- 10:15
UNIVERSE- 16:23
UNLESS- 14:24 16:2 17:6
UNPAID- 3:14 8:18 11:6 18:6 24:24
USED- 4:10 16:23 25:19
USING- 4:7

——————— V ———————
VERIFY- 26:16
VERSUS- 14:18 16:18
VIEW- 4:9 6:22 17:8,19 29:8,11 30:5
VIEWED- 29:24 30:1
VIEWS- 29:4

**W**

WAIT- 21:11
WANTS- 6:23 14:3
22:15
WASN'T- 12:8
13:16 20:1 29:20
WE'RE- 3:20 4:25
5:8,9 6:6 9:1,6,
17 14:17,25 16:9
17:23 19:4,7,8,
14,18 20:1,23
21:12 22:16,17
25:8 27:1 28:10
30:11 31:11 33:9
34:15
WEEK- 5:7 34:10
WEEKS- 6:5
WEREN'T- 20:17
21:9
WERKHEISER- 6:12,
13 14:12,13 15:3,
10,22,25 16:3
17:1,3,8,12
26:13 27:4,20
28:7,12,14,18
29:20 31:20 32:1,
20 33:18 35:2,7
WHEREUPON- 35:8
WHOLE- 24:4 27:21
WILL- 9:11 30:16,
18,20 34:9
WILLIAM- 6:9
23:23
WILLINGNESS- 6:19
WILMINGTON- 24:7
WITNESSES- 27:6
WON- 8:13
WON'T- 18:17
19:1 24:4
WORK- 8:15,24
9:15 11:1,23
20:2,3,4,6 21:9,
18 25:9,15,24,25
30:2 33:6
WORKED- 11:2
34:17
WORKING- 11:21
WOULDN'T- 20:13,
14
WRITING- 18:9

**Y**

YOU'RE- 7:7
22:11,25